83 So.2d 365

Willie J. LASSITER

v.

STATE.

3 Div. 982.

Court of Appeals of Alabama.

Aug. 9, 1955.

Rehearing Denied Aug. 30, 1955.

Bernard F. Sykes, and Robt. Straub, Asst. Attys. Gen., and Alfred W. Goldthwaite, Montgomery, of counsel, for the State.

Jones & Nix, Evergreen, for appellant.

BONE, Judge.

The appellant was tried in the Circuit Court of Conecuh County under an indictment for second degree murder. Upon trial he was found guilty of manslaughter in the first degree by the jury and was sentenced to imprisonment for a term of two years. Appellant's motion for a new trial having been overruled, his appeal is taken to this court.

This is the second appeal of this case. 36 Ala.App. 695, 63 So.2d 222. On the former appeal the case was not considered

on its merits, but was reversed because of irregularities relative to the excusing of jurors.

Upon the former trial the indictment was for first degree murder, resulting in a conviction for second degree murder and the imposition of a sentence of ten years.

At approximately six o'clock on the evening of October 9, 1950, at the home of Mrs. Pearl Overstreet located about four miles west of Evergreen, Alabama, Carlton Crosby was shot and killed by the appellant. Mrs. Overstreet and her son Ernest, were present at the time of the shooting.

The testimony indicates that on the fatal evening the deceased was seated at the kitchen table having supper. The table was located in line with the front door of the house, the distance between the two being approximately twenty feet. The doorway between the front room and the kitchen was merely a doorway without a door. At the time the appellant came to the house, Mrs. Overstreet was in the kitchen serving supper, while Ernest was in the front room. The testimony is also to the effect that appellant came to the home of Mrs. Overstreet pursuant to a planned coon hunt for the night in question, and he was to come by for Ernest Overstreet. The appellant knocked on the door and was admitted by Ernest. The appellant was carrying a 22-caliber automatic rifle when he entered the front door. This was admittedly standard equipment to be carried on a coon hunt.

The State's evidence tends to show that appellant came inside the room approximately four feet and stated he was going to kill Carlton Crosby. Mrs. Overstreet told Crosby to go out the back door and moved toward the doorway to the kitchen, telling the appellant that she wished no trouble in her house. As Crosby arose from the table, appellant started shooting. Ernest testified that he grabbed for the appellant's rifle as the first round went off and fell across the bed. He testified also that the first round missed the deceased. However, the appellant shot about seven more rounds which struck the deceased.

The testimony of Mrs. Overstreet and Ernest indicated that the front door remained open. The appellant, after seeing the deceased fall, walked out the front door. The deceased was, at the time of the shooting, wearing a white shirt with the top button unbuttoned. The State's evidence also is to the effect that the deceased was unarmed, and that at the time the deceased arose from the table he put his hand up toward his shirt, Ernest testifying that the deceased appeared to have been reaching for a cigarette in his shirt pocket. Ernest further testified that he and the appellant, with two others, had a coon hunt planned for that evening, and that appellant's coming to his house was part of the plans for the hunt.

Against this evidence, the appellant testified that on the evening in question he went to the home of Mrs. Overstreet for the purpose of picking up Ernest to go coon hunting. He testified that after entering the front room of the house Ernest closed the door behind him. He then asked Ernest, "You ready?", and Ernest replied, "Not quite." He denied any statement that he was going to kill Crosby. He testified that he was in the house only about a minute and a half, and that he saw the deceased reach into his shirt, where deceased had often told appellant and others that he always carried a pistol, and appellant, thinking that the deceased was pulling a gun, proceeded to shoot. He did not see a pistol in the possession of deceased at that time. The evidence shows that after the shooting, and after the departure of the appellant, Mrs. Overstreet went to tell Mrs. Crosby about the event, and Ernest went for help, leaving the body alone for a period of approximately ten minutes. No pistol was found on the body of the deceased by officers or by the examining doctor, but there was evidence indicating that the shirt may have been unbuttoned half way down the front.

The record reveals that the deceased had a reputation for carrying a pistol under his shirt. The record also reveals that in all probability the deceased and Mrs. Overstreet were living in adultery; that Mrs.

Overstreet was an aunt by marriage of the appellant. The record indicates that the deceased had made advances to the wife of appellant on the afternoon in question, although such advances were not known to the appellant at the time of the shooting. The deceased, two months before his death, had stated that he would have to kill appellant, which statement was made known to the appellant. The appellant also introduced evidence that the witness, Ernest Overstreet, had stated in the presence of witnesses at the home of the defendant immediately after the shooting that appellant had to kill Crosby or Crosby would have killed him because he (Crosby) was armed. Ernest denied having made the statement.

Defendant admitted the shooting and interposed a plea of self defense, suggesting that the deceased thought he was aware of deceased's advances to appellant's wife and that appellant had come after him.

The appellant insists that the trial court erred in overruling his motion for a new trial on the grounds that the verdict and judgment of the court were contrary to the evidence in the case, contrary to the law in the case, contrary to the law and the evidence in the case, contrary to the great preponderance of the evidence in the case, and contrary to the great weight of the evidence in the case; on the court's refusal to give the general affirmative charge for the defendant; and on the further ground of newly discovered evidence since the trial on March 1, 1954.

Grounds A, B, C, and D of the motion for a new trial set up the proposition of newly discovered evidence. Appellant offered an affidavit of Robert F. Frazier in support thereof, which says in effect that Frazier bought a pistol from the father of deceased, and that the father told him that it was the pistol which his son had in his possession the night he was murdered. Appellant offered to produce the pistol in evidence on a new trial. Deceased's father, Charles F. Crosby, admitted having sold the affiant a pistol, but denied that he made any statement that it belonged to his son. He stated that he bought the pistol from a policeman in Opelika and denied that the pistol offered in evidence in support of the motion for a new trial was the one he sold affiant. He also testified that he was not present the night the defendant shot his son.

■ Provision is made for granting of new trials in certain instances in Title 7, Sec. 276, Code of 1940. This section reads in part as follows:

"On motion filed within thirty days from entry of judgment a new trial may be granted in the following causes: * * *. Newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial."

This section has been interpreted by the courts of this State many times. The general rule is that newly discovered evidence must be such as could not, with reasonable diligence, have been discovered in time to be produced at the trial; it must be such as to render probable a different result on the retrial of the case.

■ To these requirements, and as corollaries thereto, the courts have added certain others: That the newly discovered evidence must be material and competent to the issue of fact originally tried; that it must not be merely impeaching evidence; and that it must not be merely cumulative. Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45. The motion must negative fault on the part of the movant in the failure to discover the evidence on which the motion is based, before the trial. It must aver and show that the failure to produce the evidence on the original trial was not due to lack of diligence on the part of the movant. Girardino v. Birmingham Southern R. Co., 179 Ala. 420, 60 So. 871; Bayonne Knife Co. v. Umbenhauer, 107 Ala. 496, 18 So. 175. And the new evidence must be not only of such character as tends to impeach or discredit evidence that materially influenced the result, but sufficient to probably change the result. A new trial should not be granted on this ground when it does not appear that the facts offered to be proved could successfully be offered in evidence on another trial. Lowery v. State, 98 Ala. 45, 13 So. 498.

When deciding whether or not a new trial should be granted on the ground of newly discovered evidence, much is to be left to the sound discretion of the trial court, and its decision should not be revised on appeal unless it clearly appears that such discretion has been abused. Thomas v. State, 231 Ala. 606, 165 So. 833; Washington v. State, 259 Ala. 104, 65 So.2d 704; Welch v. State, 28 Ala.App. 273, 183 So. 879, certiorari denied 236 Ala. 577, 183 So. 886.

The evidence which appellant now contends entitled him to a new trial is not, we think, sufficient to justify reversal of the lower court's decision.

Grounds 1 through 6 of the motion for a new trial are without merit. It has been said that no ground of new trial is more carefully scrutinized or more rigidly limited than that the verdict is against the evidence. The motion should be granted on this ground only when it affirmatively appears that the substantial ends of justice require the examination of the facts by another jury. If these be the principles by which the trial court is governed, they apply with much more force to the exercise of the power by an appellate court.

The decision of a trial court, refusing to grant a new trial on the ground of insufficiency of the evidence or that the verdict is contrary to the evidence, will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. Cobb v. Malone, 92 Ala. 630, 9 So. 738; Bufford v. State, 25 Ala.App. 99, 141 So. 359.

In the instant case the evidence was conflicting, and the true facts were properly left for the determination of the jury.

There was no error in the court's refusal to give the affirmative charge under the developed evidence.

The verdict of a jury and the judgment of a trial court are solemn things; and they should not be overturned by an appellate court, unless a good, legal reason therefor is shown. The evidence is sufficient to sustain the verdict and judgment, and, using our guide the well known rules laid down in Cobb v. Malone, supra, we reach the conclusion that the ruling of the trial court in denying the motion for a new trial should not be disturbed.

The judgment below is ordered affirmed.

Affirmed.