279 So.2d 146

**Bobby L. "Buddy" FORD**

v.

**STATE.**

**7 Div. 214.**

Court of Criminal Appeals of Alabama.

March 20, 1973.

Rehearing Denied May 8, 1973.

---

Hank Fannin, Talladega, for appellant.

William J. Baxley, Atty. Gen., Montgomery and Samuel L. Adams, Special Asst. Atty. Gen., Dothan, for the State.

HARRIS, Judge.

Appellant appeals from a conviction of assault with intent to murder wherein he was sentenced to twelve (12) years imprisonment in the penitentiary. He had retained counsel in the court below. He is in this court with a free transcript and the same attorney was appointed by the trial judge to represent him on this appeal. Appellant elected not to have his sentence suspended pending appeal and is now doing servitude.

Appellant and the victim, Irvin, of this unfortunate shooting had been friends and at times fellow employees for over twenty years. During this score of years, they had never had an argument of any kind. On January 23, 1972, Irvin, together with his cousin went to a friend's house, Mr. Joe Armbreaster, to get him to help in their search for a lost dog. At Armbreaster's house they found appellant, who was visiting there. Irvin's automobile was not functioning properly and Ford told Irvin they would use his car if Irvin would pay for the gas and drive. This was agreed upon and all four embarked upon the trip. All four of the occupants were drinking— some beer and the others whiskey, vodka and rum. Irvin was driving appellant's car. They stopped at several places during the ride and consumed more intoxicating beverages. At one stop, appellant took his pistol out of the holster and shot twice at a tin can on the roadway. After three or four hours of riding around, they decided to return to Armbreaster's home. Irvin wanted to return by one route and appellant chose another route. This provoked an argument between the two and appellant took off his coat and laid it on the hood of the car. Irvin then told appellant that it was his car and he could go any route he chose. Appellant put his coat on and they left the scene with appellant driving. After driving a mile or two, Irvin asked appellant if he wanted him to drive and appellant agreed. Irvin drove the car back to Armbreaster's house. All four men went in the kitchen. After being in the kitchen about fifteen minutes, appellant asked Irvin if he would help him find a job and Irvin replied that he would see if he could get him a job at Irvin's place of employment. There was some discussion about appellant picking up Irvin the next morning and carrying him to work where Irvin would see if he could get his employer to hire appellant. There was a good deal of noise in the kitchen and appellant asked Irvin to "let's go outside" so that they could get together on the exact time he should pick him up. Appellant walked out the back door followed by Irvin. There were three or four steps at the back and when appellant reached the bottom, Irvin was holding the screen door open for Armbreaster's German Shepherd dog to enter the back porch where dog food was kept. According to appellant, the dog in lunging toward the open door made contact with him causing him to lose his balance and he realized his pistol was coming out of the holster and he grabbed it and it went off and the bullet entered Irvin's side about two and one-half (2½) inches below

the left rib cage and Irvin fell to the ground. According to Irvin's testimony, he did not see the pistol in appellant's hand until after it was fired and while he was falling. He said he fell about ten (10) feet from appellant. He further testified that appellant did not say a word to him prior to the time he was shot, but after he was shot appellant said "Do you believe it will shoot now?". Irvin explained this statement by saying that while they were riding around he was joking with appellant and just asked him if he thought the thing would shoot. At one point in Irvin's testimony, he said he felt the pistol in his side just before the shooting, but he did not see the pistol.

After the shooting, Irvin shouted to his cousin, who was inside the house, saying, "he shot me". Appellant went in the house to get the other two men to help put Irvin in the car to take him to the hospital and met the cousin coming out. Irvin's cousin asked appellant why he shot him and appellant said, "I don't want any trouble out of you, Pee Wee."

Irvin further testified that he had an accident policy at the time he was shot and he made a claim under the policy and was paid by the insurance company. He stated that he knew if he did not say it was an accident, he could not collect under the terms of the policy.

At the conclusion of the state's case, appellant made a motion to exclude:

"MR. FANNIN: Judge, at this point, I move to exclude the state's evidence— failure to make out a prima facie case.

"THE COURT: Overrule.

"MR. FANNIN: We except. We call Mr. Ford."

To authorize the submission of a criminal case to the jury there must be *substantial* evidence tending to prove all the elements of the charge. A mere "scintilla" of evidence in view of the presumption of innocence is wholly insufficient. The uncontradicted evidence in this case does not measure up to this test. To allow this conviction to stand would be wrong and unjust. The trial court erred in overruling appellant's motion to exclude the state's evidence. Ex parte Grimmett, 228 Ala. 1, 152 So. 263; Inge v. State, 28 Ala. App. 38, 178 So. 453; Austin v. State, 29 Ala.App. 327, 195 So. 566; Willis v. State, 29 Ala.App. 365, 197 So. 62.

Reversed and Remanded.

All the Judges concur.