329 So.2d 653

**Glen WEST**

v.

**STATE.**

1 Div. 598.

Court of Criminal Appeals of Alabama.

Jan. 20, 1976.

Rehearing Denied Feb. 17, 1976.

Calvin Clay, Mobile, for appellant.

William J. Baxley, Atty. Gen. and C. Lawson Little, Asst. Atty. Gen., for the State.

LEIGH, M. CLARK, Supernumerary Circuit Judge.

Appellant was convicted of murder in the second-degree of Billy Dannelley on an indictment charging him with murder in the first degree. The jury fixed his punishment at twenty-five years imprisonment in the penitentiary, and he was sentenced accordingly.

The single issue between the parties as presented by their briefs on appeal is whether the trial court should be reversed for its submission to the jury of the question of the guilt or innocence of defendant, over defendant's protest, as made by his motion to exclude the evidence at the conclusion of the evidence for the State and his written request for the affirmative charge in his favor at the conclusion of the evidence for both sides.

The body of Dannelley was found in Carter County, Tennessee, on Friday, March 29, 1974; a bedspread with bloodstains on it was found near the body; the cause of death was determined to be the result of a blow on the head by a blunt instrument, fist, or feet; there were lacerations over the face and other portions of the body.

A witness for the State testified that about 12:15 A.M. Wednesday, March 27, he was awakened by people going in the door of Dannelley's apartment which adjoined the apartment of the witness. He said he later heard what sounded like a fight and scuffling. He identified two of the participants as Dannelley and James West, Jr., brother of appellant. The witness knew Dannelley and James West, Jr., who were living together at Dannelley's apartment. He could not identify the third person. The witness said that he heard Dannelley say, "Please don't. Stop him," and later, "Oh my God." He said he heard the third person, whom he could not identify, say, "Let him wipe up the blood," and that later he heard someone say, after the scuffling had stopped, "Well, let me get my car keys," but that he could not determine who said the last quoted words. Thereafter he heard the people leave the apartment.

Dannelley did not report for work on March 27. He was a teacher in a school of an adjacent county. He lived in Mobile County. Out of concern for him, his apartment was entered by his brother about 10:00 A.M. March 27. His brother testified he saw blood and hair in the kitchen; garbage was turned over in the kitchen; the kitchen window was broken; there was blood in the bathroom and hair in the bedroom; the bedspread was missing from the bed in the bedroom. The glass of the front door had been broken and four window panes were broken. He testified that his brother, the deceased, was a homosexual. He testified that the bedspread that was missing from his brother's apartment was like the bedspread that had been found with bloodstains on it near his brother's

body in Tennessee. He further testified that the bedspread that had been on his brother's bed was not thereafter found in the apartment.

Defendant did not testify, but his father testified that on March 24, 1974, his wife and appellant came to Mobile from Raeford, North Carolina, where they had been living; that about 7:00 A.M., March 27, appellant and James West, Jr., came to their father to borrow money; that at that time they were in the automobile of Billy Dannelley; that Dannelley's dogs were in the car; that appellant and his brother, James West, Jr., left after he had cashed a check and given them fifty dollars, that, "My son said he was going home. My son Glen."

James West, Jr., was the principal witness for defendant. He testified that he and Bill Dannelley had gone to North Carolina in Dannelley's automobile and brought Glen and his mother to Mobile; that he and Glen and Dannelley were together several times and during the evening of March 26, they went over to the "Goldenrod," and left there about midnight. He said they took Glen to his dad's apartment and then he and Dannelley went to Dannelley's apartment. He testified that thereafter while the two were at Dannelley's apartment an argument ensued between them about some women and Dannelley got mad and swung at him. The witness then hit Dannelley, Dannelley stumbled over a trash can and his head hit the window in the door. His nose was bleeding and he went to the bathroom and put some cold rags on it; Dannelley's nose was bleeding profusely. They then decided to ride around; they went to McNally Park over on Dauphin Island Parkway; they sat out there on rocks and drank beer; they had Dannelley's puppies in the automobile; they were gone three or four hours; he drove Dannelley back to Dannelley's apartment and then went to his father's apartment and "woke Glen up." His father and mother had spent the night with their daughter. He and Glen thereafter went to the paint

store where his father worked and borrowed fifty dollars. He and Glen went to McNally Park and drank some beer. Glen had told him that he was going back to North Carolina. He and Glen went to Dannelley's apartment; Glen stayed in the car. James and Dannelley then took Glen out on the causeway to Buck's Truck Stop and let him out of the car to catch a ride to North Carolina about 10:00 A.M. James and Dannelley then went to Dauphine Island. They "goofed off and drank beer." They stayed there a couple of hours. They discussed going back to the causeway to see "if Glen caught a ride yet." They came back to Dannelley's apartment and James "got some clothes." He said, "We consequently went to North Carolina," arriving there about midnight that night. They went into a wooded area and "that is when Dannelley became suddenly violent." They had a fight in which Dannelley was using a knife; he kicked Dannelley under the chin and Dannelley fell against the car bumper; Dannelley appeared to be dead. James loaded Dannelley in the trunk of the car and drove to Carter County, Tennessee, and rolled his body in the ravine where it was afterwards found. He returned to his former home in Raeford, North Carolina. He denied that his brother, Glen West, had had any part in the fight with Dannelley in Dannelley's apartment or in the fight with Dannelley in North Carolina. He denied that appellant was with the two on either occasion or on any part of the trip from Mobile to North Carolina or therefrom to Tennessee where the body was "rolled out in the ravine" at a "rubbage dump . . . right off the side of the road." James said that the next time he saw Glen was "when he came back down here [Mobile] to jail."

Counsel for appellant has submitted a creditable and comprehensive brief on the subject of the sufficiency of evidence to warrant a verdict of guilty in a criminal case, particularly an unlawful homicide case, and more particularly when such a

case is based solely on circumstantial evidence. The authorities cited support and emphasize the position that defendant is entitled to the presumption of innocence and should not be convicted unless the evidence is sufficient to prove his guilt beyond a reasonable doubt and to a moral certainty. To be noted, however, is the difference in the tests of the sufficiency of the evidence at different stages of a prosecution in a criminal case. Proof of guilt beyond a reasonable doubt in the minds of the jury is essential to a conviction. For the submission of the case to a jury, there must be substantial evidence tending to prove all elements of the crime, a mere scintilla not being sufficient. *Ex parte Grimmett,* 228 Ala. 1, 152 So. 263; *Moore v. State,* 52 Ala.App. 394, 293 So.2d 309 (1974); *Lloyd v. State,* 50 Ala.App. 646, 282 So.2d 85 (1973); *Ford v. State,* 50 Ala.App. 343, 279 So.2d 146, cert. denied 291 Ala. 778, 279 So. 2d 149. On a motion for new trial (not involved, however, in this case) properly challenging the verdict as opposed to the weight of the evidence, it should be set aside if it is so decidedly against the weight of the evidence that the court is convinced that it is wrong and unjust. *Colvin v. State,* 39 Ala.App. 355, 102 So.2d 911, cert. denied 267 Ala. 694, 102 So.2d 913; *Lassiter v. State,* 38 Ala.App. 287, 83 So.2d 365, cert. denied 263 Ala. 618, 83 So.2d 369. On appeal, an appellate court is not required, and it would be beyond its province, to determine whether there was proof beyond a reasonable doubt of defendant's guilt. Such a requirement would impair, if not destroy, the jury trial process. If there is substantial evidence to support all of the elements of the crime charged, the trial court is justified in overruling the motion to exclude the evidence and in refusing an affirmative charge in favor of defendant. The area of responsibility of the appellate court on the question of the sufficiency of the evidence is clearly defined by Mr. Justice Merrill in *Willcutt v. State,* 284 Ala. 547, 9, 226 So.2d 328 (1969) as follows:

"The scintilla rule does not apply in criminal cases. There must be substantial evidence tending to prove all the elements of the charge. *Ex parte Grimmett,* 228 Ala. 1, 152 So. 263. The burden is on the State to prove beyond a reasonable doubt that the crime has been committed and that the defendant was the person who committed it. *Jarrell v. State,* 251 Ala. 50, 36 So.2d 336. The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone. *Byrd v. State,* 213 Ala. 333, 104 So. 830.

"We cannot say in the instant case that there was not enough evidence to allow the jury to draw the inference that the defendant was the person who committed this robbery. The defendant presented a strong case in support of his alibi. The testimony of his witnesses was in direct conflict with the testimony of the State's witness. Yet the State's witness made a positive identification of defendant as the person who robbed and burned him. The State presented substantial evidence and the jury had before it an adequate basis for drawing inferences and conclusions against the defendant. It is for the jury, not the trial court or this court, to find the facts and to determine guilt or innocence. The State presented sufficient evidence upon which the jury could base its verdict."

■ The testimony of the witness as to the fight or scuffling of Dannelley was not absolutely conclusive that three persons were in the apartment engaging to some extent in the argument or fight, but it is very persuasive and certainly it constitutes substantial evidence that there were three persons in the apartment at the time, which is contrary to the testimony of James West, Jr., who said that only he and Dannelley were there at the time, that the appellant

was not present.[1] James West, Jr., also testified that he and Dannelley left Dannelley's apartment soon after the disturbance. The witness who heard the disturbance testified that he did not know that the parties left the apartment. However, on cross-examination he further testified that on a previous hearing he had said "and then after that it quieted down and they left. I went back to sleep." He said he did not hear the car and on further cross-examination he said:

"A. It seems—yes, I remember, I remember movements back toward the front. I heard a door shut at one time. It is a very small muffled sound that the door . . .

"Q. Did you in fact testify that they left?

"A. Yes."

To some extent the witness' testimony was corroborative of the testimony of James West, Jr., that he and Dannelley left the apartment for the rest of the night, but it is weak in that respect, and on the whole, we think, the jury could have reasonably viewed his testimony as in conflict with the testimony of James West, Jr., on the point. The witness did not hear the car leave the apartment, and it appears that the only thing he did hear that could have been considered a departure from the apartment was the shutting of a door at one time after the disturbance.

The question of the reasonableness or unreasonableness of the narrative of James West, Jr., was a matter for the determination of the jury. The verdict of the jury shows unmistakably that they did not believe James West, Jr. Unanswered by that testimony was the serious question, Why did Dannelley not notify the school where he taught that he would be absent from school? That his failure to do so, if he had been alive, was not habitual it seems, in view of the concern manifested when he did not appear for duty that day and sent no word that he would be absent. No reasonable explanation is given for his decision to return to North Carolina where he had been the week before. The jury well could have questioned the reasonableness of the testimony of James that James and Dannelley took Glen to the causeway east of Mobile to hitchhike a ride back to North Carolina and several hours thereafter decide to go and see if he had caught a ride and then proceed to North Carolina themselves. No explanation was given, consistent with the theory that Dannelley was not killed in his apartment, for the presence at the place where his body was dumped in Tennessee of the bedspread with bloodstains on it that had been in, and was missing from, Dannelley's apartment. Taking all the evidence into consideration, there was sufficient basis for a determination by the jury that appellant was the third party in the apartment on the early morning of March 27, 1974, that a fight ensued in which appellant was a participant and Dannelley was killed, that sometime before 10:00 A.M. that day his body was placed in the bedspread of his bed, removed from Mobile and taken in Dannelley's car by James West, Jr., or by James West, Jr. and appellant, and thrown into a rubbish dump in Tennessee. As to the crime, James West, Jr. has been tried by a jury in Mobile County and found guilty of murder in the first degree. The verdict of the jury in this case is consistent with credible, substantial evidence which the jury had a right to believe, even though it is inconsistent with substantial evidence, which the jury did not believe.

The judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7,

---

1. According to James West, Jr., the three had spent the night in the apartment on each of the two immediately preceding nights.

1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

Affirmed.

All the Judges concur.