316 So.2d 348

**Bernard Ino BUTLER**

v.

**STATE.**

**3 Div. 335.**

Court of Criminal Appeals of Alabama.

May 27, 1975.

Rehearing Denied June 17, 1975.

William J. Fuller, Jr., Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Carol Jean Smith, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Carnal knowledge of a girl under age twelve. Sentence: 20 years.

The charge grew out of an investigation of the murder of a prostitute in Montgomery which uncovered a ring of young black prostitutes patronized mostly by middle-aged white men.

The prosecutrix, at the time of the offense was eleven years of age. She testified to having sexual relations with the appellant on fifteen or sixteen occasions. She said Butler would ride through the area where she lived, pick her up, and on two or three occasions took her to a local "rooming house" where the acts took place. The prosecutrix stated that the appellant paid the owner of the house $5.00 and gave her $10.00, and took her home.

A twenty-year-old prostitute called "Mut" testified that she accompanied the appellant and the prosecutrix to the rooming house on three occasions and saw Butler and the eleven-year-old prosecutrix enter one of the rooms. The owner of the house testified that the appellant Butler brought the prosecutrix and "Mut" to his place and had paid him for a room.

Detective Cunningham of the Montgomery Police Department testified as to the circumstances leading up to the arrest of Butler and his interrogation. The appellant called no witnesses on his behalf.

There was no motion to exclude the State's evidence when the State rested its case in chief.

There was no exception to the trial court's oral charge. A motion for a new trial was duly filed and overruled by the court below.

## I

■ It is contended by counsel for the appellant that the prosecutrix was an accomplice of the appellant and could not be convicted on her uncorroborated testimony. We do not agree with that argument. The prosecutrix was an eleven-year-old girl. Even if she was an admitted prostitute, the prohibition of Title 14, § 398, Code of Alabama 1940, is absolute. A girl under the age of twelve cannot consent to carnal knowledge and neither can she be an accomplice to such criminal conduct.

The Alabama Supreme Court held in *Noble v. State*, 253 Ala. 519, 45 So.2d 857 (1950):

"The first contention is that since the act was with her consent, she was an accomplice and, therefore, that defendant could not be convicted on her uncorroborated testimony on the authority of *Denton v. State*, 17 Ala.App. 309, 85 So. 41; section 307, Title 15, Code. That was on a charge of incest in connection with a woman over the age of consent. But when it is as to an offense in connection with a girl under the age of consent, she cannot be an accomplice, and the rule has no application. *Duncan v. State*, 20 Ala.App. 209, 101 So. 472."

## II

Appellant's counsel complains that the court allowed Detective Cunningham to testify as to what the appellant told him on interrogation and refused to make the witness produce notes in his office file concerning the interrogation. Appellant contends the court erred in holding that the best evidence was the testimony of the officer and not notes he made in reference to his interrogation.

■ The State in fact produced the file in question which was reviewed out of the presence of the jury and the notes were shown to have been made by another detective and not by the witness himself. Nevertheless the court allowed counsel for the appellant to cross examine Officer Cunningham from the portion of those notes having reference to the carnal knowledge case. The remainder not allowed dealt with the murder investigation. We find no error on the part of the trial court in this instance as the appellant received the notes he requested and used them on cross examination. Likewise, the notes were not used to refresh the witness' recollection while testifying and thus the appellant had no right to their production in the first instance. *Robinson v. State*, 49 Ala.App. 511, 273 So.2d 487 (1973).

## III

Part of the appellant's motion for new trial sets out, as Exhibit A, a November 1, 1973, article from the Montgomery Advertiser concerning the discovery of a prostitution ring in Montgomery. Appellant in effect claims the article prevented him from getting a fair trial on March 21, 1974.

■ Prejudicial pre-trial publicity may be a ground for change of venue. The proper method of bringing this to the attention of the trial court is by filing a sworn application for change of venue with the trial court pursuant to Title 15, § 267, Code of Alabama 1940. This matter was improperly raised for the first time in a motion for new trial and not by sworn application in compliance with § 267, *supra*. *Cook v. State*, 269 Ala. 646, 115 So. 2d 101 (1959); *Byers v. State*, 105 Ala. 31, 16 So. 716 (1894); *Kelly v. State*, 160 Ala. 48, 49 So. 535 (1909). Also see, *Acoff v. State*, 50 Ala.App. 206, 278 So.2d 210 (1973).

## IV

Out of the presence of the jury, a predicate was laid by the State to introduce any statement into evidence made by the appellant to Detective Cunningham during interrogation. The evidence shows appellant was properly apprised of his *Miranda* rights and that his statements were voluntarily given. The Assistant District Attorney then asked the witness if the appellant admitted knowing any of the girls he saw at the police station. The prosecutrix was one of the group present there just before the appellant was questioned. The following then transpired:

"A. Well, I took him back in the—one of the rooms, and we began to interrogate him in reference to the murder.

"Q. Um hum.

"A. And we asked him did he know the girls that were sitting outside.

. . . . . .

"A. And he admitted that he knew some of the girls, yes, sir.

"Q. Did he ever admit anything about them being in his car?

"A. He admitted that one or two of them had been in his car, but he didn't specify and never would and said he would rather not talk about that.

"Q. All right. And after that, he told you he wanted a lawyer, and you all quit asking him questions?

"A. Yes, sir. We quit asking him questions, yes, sir. He told us that he didn't mind talking about the murder, but he didn't want to talk about the other."

On cross examination, still out of the presence of the jury, the court stated:

"I think it would be admissible up to that point. He was read his rights, socalled miranda rights. He was not threatened or offered any reward or hope of reward. And he was asked more or less preliminary questions, asked if he knew any of those girls and if any of the girls had been in his car; and he answered affirmatively to both of them, and then stopped and said he would rather have a lawyer."

The jury was returned to the courtroom, the predicates were again laid and the following later transpired during Detective Cunningham's testimony:

"Q. All right. Now, you asked him if he knew those girls?

"A. Yes, sir.

"Q. All right. And what was his answer?

"A. He said he knew some of them—

"MR. FULLER: I object, Your Honor, to this question. I don't want to interrupt, but I would like to have an objection to each answer.

"THE COURT: Overruled.

"Q. (By Mr. Thomas) Now, what was his answer?

"A. He knew some of them.

"Q. All right. Did he say anything else about the car, anything else?

"A. We asked him had he ever been out with any of these girls, and he said 'No.' And then we asked him about them being in his car and being with him, and he said some of them had, one or two of them had, I believe he said.

"Q. When you asked him if any of them had ever been in his car, he said, 'One or two of them had.' And then what was the end of the conversation; what did he say then?

"A. Then the conversation shifted to the dead girl; and then after we had interviewed him about that, we asked him about the girls in particular that he had went out with for the purpose of sex. And he said that he would rather not talk to us about that, that he wanted his lawyer.

"MR. FULLER: I ask that that be excluded, Your Honor.

"THE COURT: I think that's admissible. He said he told him any time he wanted to stop and wanted a lawyer, he could have one; and he said he wanted his lawyer, and the detective stopped. Overruled, overrule the objection.

"MR. FULLER: We except."

■ The first objection, above, came after the answer was given, was general in nature and, therefore, the trial court could not err in overruling it. *Lucky v. State,* 50 Ala.App. 324, 278 So.2d 772 (1973). After the last answer, quoted above, counsel for the appellant merely asked that it be excluded. No objection was made prior to the answer and no ground for the motion to exclude was given. *Miller v. State,* 48 Ala.App. 28, 261 So.2d 447, cert. denied 288 Ala. 746, 261 So.2d 451 (1972); *Ayers v. State,* 48 Ala.App. 743, 267 So.2d 533 (1972).

■ The answer dealt with a partially inculpatory statement given the witness by appellant. Proper predicates were laid us to a *Miranda* warning and as to voluntariness, and absent objections specifying grounds of inadmissibility, the trial court could not be put in error for refusing to exclude the answer.

## V

Throughout the course of the trial, counsel for appellant insisted that the eleven-year-old girl, with whom appellant was charged with having sexual relations, was a prostitute. He contended she consented to the sex acts and sold her favors. Likewise, he continued to stress the fact that she made no complaint. Counsel for appellant was apparently attempting to try the carnal knowledge charge as if it were a charge of rape. The trial court repeatedly attempted to limit such immaterial and im-

proper evidence, arguments and cross-examination.

The trial court at one point excused the jury and entertained extended argument from appellant relative to those issues. The court then held that consent is immaterial in a case of carnal knowledge of a girl under the age of twelve. Nevertheless, appellant's attorney continued to go into the matter of the girl being a prostitute, receiving money, and her willingness to engage in sexual acts. On cross examining Detective Cunningham, near the end of the trial, he again went into the question of whether she made a complaint, whereupon the following occurred:

"Q. Now, that wasn't the complaint then. She just made the statement to you that she had had sex relations with Colonel Butler?

"A. It would be a complaint, because it is a violation of the law, Mr. Fuller.

"MR. THOMAS: Your Honor, we would object to this line of testimony. He has been indicted by the Montgomery County Grand Jury.

"MR. FULLER: I object to that statement and ask that it be excluded from this jury.

"THE COURT: All right. Indicted by the grand jury is not testimony, and it is a form of getting the matter before the court. It has also the complaint and everything else, so let's proceed with something that's legal, Mr. Fuller, please.

"MR. FULLER: Well, that's what I'm trying to do, Your Honor.

"THE COURT: Well, I haven't seen any evidence of it yet. So let's get on with the case.

"MR. FULLER: I would like to object to Your Honor's statement.

"THE COURT: All right. Object to it, and I'll overrule your objection, but please get on with the case."

Appellant contends the remarks of the trial judge had the effect of accusing the appellant of having presented no legal "evidence". We note here that the appellant presented no evidence during the course of the trial. No witnesses were called for the defense and counsel for appellant only engaged in cross examination of the State's witnesses to elicit any testimony at all.

The appellant cites several authorities in his brief for the proposition that the trial court's remarks were prejudicial and thus reversible. *Dennison v. State,* 17 Ala.App. 674, 88 So. 211 (1921), sets forth a correct statement of the law in this regard, which has often been cited and quoted in similar cases. However, Judge Bricken, after eloquently stating the law, did not find the action of the trial judge to constitute reversible error in that case.

There, as here, a controversy between the court and counsel was resolved out of the presence of the jury. After the jury returned, the controversy was renewed and the trial court then criticized the defense counsel, directed him to quit talking so much, to resume his seat, and to proceed with the trial of the case.

We find many cases which do not support the appellant's contention. In *Watson v. State,* 155 Ala. 9, 46 So. 232 (1908), the Alabama Supreme Court held it was not prejudicial for the trial court to have instructed a witness that, "you need not answer that question," and then say to defense counsel:

" 'I do not like to hear as intelligent counsel as represents the defendant ask such a question. They know, or should know, that the mere fact that the witness has been indicted for an assault with intent to murder in no way impeaches such witness, and such evidence is not relevant' . . . ."

No error was committed by the trial judge in *Myers v. Town of Guntersville,* 21 Ala.App. 559, 110 So. 52 (1926) by admonishing and rebuking defense counsel by saying:

" . . . You have asked that enough; you just want to drag them around from first one thing to another."

In *Doss v. State,* 224 Ala. 90, 139 So. 290 (1932), the following conduct was held to be merely expediting the trial and in no manner calculated to control the jury in its consideration of the weight to be given the evidence:

"The Court: 'I want you gentlemen to finish this case.'

"Mr. Prosch: 'We are doing the best we can.'

"The Court: 'I am going to make you do it. I am not going to tell you you can do the best you can. I am not going to keep this jury here waiting two or three days on a case that ought to be tried in a few hours.' "

Our Supreme Court found no error on the part of the trial judge for stating that the defense had shown no insanity and telling defense counsel, " ' . . . Some of the questions you are asking her, I can't conceive, to save my life, what bearing they have on the question of insanity'. . . ." *Seibold v. State,* 287 Ala. 549, 253 So.2d 302 (1970).

The trial court in *Vaughn v. State,* 236 Ala. 442, 183 So. 428, was not held to be in error for telling the defense counsel, "I don't want to hear from you any more on that subject;" for ordering counsel to sit down; for voluntarily again stating to counsel not to go further into a matter; and for later threatening counsel with punishment if he did not stop going into that subject.

The Court in *Vaughn* found the trial judge's statements showed some impatience but found such conduct to be understanda-

**428**

ble and excusable in light of the fact that defense counsel had repeatedly interposed objections without merit and attempted to go into particulars of wholly collateral matters which had been prohibited by the court's prior rulings. The Supreme Court found that defense counsel pursued dilatory tactics and persisted with many matters of little consequence, well calculated to try the patience of the trial judge.

We believe the trial judge in the instant case, while showing some impatience, was attempting to exercise his rightful control over the proceeding by moving the testimony expeditiously along. Two of the judge's statements to counsel were supplemented with the word "please." It appears the trial judge was only prodding counsel along to move from a matter not relevant to a carnal knowledge case, on to something relevant or "legal." In light of the above cited authorities, we are unwilling to hold that the trial court abused its discretion in exercising its control over the conduct of the trial by use of the language complained of by appellant. *Dolvin v. State,* 51 Ala.App. 540, 287 So.2d 250 (1973).

VI

The appellant's requested charges 1, 2, 3, 4 and 6 were properly refused. Such charges are not correct statements of the law relative to the offense charged under Title 14, § 398, Code of Alabama 1940, as each charge would tend to mislead the jury to the wrongful conclusion that the crime of carnal knowledge could not be committed *if the girl under the age of twelve consented. Noble v. State, supra.*

Requested charges 5, 7, 8 and 10 were substantially and adequately covered in the trial court's oral charge. Requested charge 9 was an affirmative charge with hypothesis and was properly refused as the State presented a *prima facie* case upon which the jury could make a finding of guilt. *Morrow v. State,* 52

Ala.App. 145, 290 So.2d 209, cert. denied 292 Ala. 743, 290 So.2d 213.

We have searched the record for error prejudicial to the appellant and find none.

Affirmed.

All the Judges concur.