The appellant was indicted and convicted for the rape of Nona Mae Jones, a twenty-one year old female on June 4, 1975, in Montgomery County. The appellant received a sentence of thirty years in the penitentiary. His court appointed trial counsel represents him on this appeal.
Appellant has assigned four grounds for reversible error: (1) Insufficiency of the evidence, (2) remarks of the trial judge were prejudicial, (3) the remarks by the prosecutor about excluded evidence should have been stricken, and (4) a new jury venire should have been drawn after the appellant was seen in handcuffs.
At the close of the state's case, the appellant made an oral motion to exclude. Therefore this court will briefly review the evidence.
On June 4, 1975, Nona Mae Jones was in the Greyhound Bus Station, Montgomery, Alabama, waiting for her bus to leave for Birmingham where she was a student at Daniel Payne College. The appellant approached her, identified himself as an undercover agent for the F.B.I. and showed her a badge. A bus driver confirmed the fact that F.B.I. agents work undercover at the bus station.
When Mrs. Jones left to board her bus, the appellant told her to keep walking or he would shoot her. She never saw the gun. They left the bus station and walked for a "long time". The appellant threatened to shoot Mrs. Jones if she attempted to escape.
They crossed some railroad tracks and went under "a bridge thing" where the appellant told Mrs. Jones to take her pants off or he would shoot her. They began fighting and the appellant tore her underclothes off. Mrs. Jones was knocked unconscious. When she awoke the appellant was "in" her. *Page 1364 
The appellant then made Mrs. Jones go with him to a boxcar where he raped her a second time. The appellant fell asleep and when Mrs. Jones heard a man talking outside the boxcar she escaped.
Mrs. Jones was screaming and hollering when she ran up and grabbed James Pugh, an employee of L N Railroad who was working in the train yard that night. Mr. Pugh noticed that Mrs. Jones' face was "really messed up" like "somebody had really beat her bad". Mr. Pugh notified the police and saw the appellant in a boxcar.
Officer Richard Thornell of the Montgomery Police Department investigated the rape and ascertained that it occurred behind the train station near the state dock on the waterfront. Officer Thornell found the appellant in a boxcar, frisked him and found a pocket knife and a badge in the appellant's pocket. Officer Thornell testified that Mrs. Jones told him she was raped twice on the rocks by the waterfront.
Mary Wisdom, State toxicologist, testified as to the physical condition of Mrs. Jones following the rape. From smear slides taken from the victim, Ms. Wisdom found numerous nonmotile or dead sperm cells. She also found fresh blood on Mrs. Jones' panties. From her examination, Ms. Wisdom testified that she could only tell that sexual intercourse occurred sometime within the past twelve hours. Ms. Wisdom examined Mrs. Jones at approximately 6:20 A.M., that morning.
Detective H.C. Norton of the Montgomery Police Department testified that Mrs. Jones said she was raped on the rocks under a bridge. However, when she pointed out the place where the rape occurred to the police officers, the bridge turned out to be the river boat landing.
Another detective for the Montgomery Police Department, Lawrence Rutland, testified that the appellant, after being advised of his constitutional rights, made an oral statement that he did carry Mrs. Jones to the railroad yard where he had sexual intercourse with her. However, the appellant told the detective that he paid Mrs Jones $5.00.
The appellant testified that while he was on his way to see a friend, Mrs. Jones ran up and grabbed him, putting her arms around him. He noticed her face was swollen and asked her what was the matter. He asked her for a "date" (to go to bed with her) and she agreed for $5.00. They then went to a grassy spot near the railroad tracks and had intercourse. The appellant testified that he found the badge right before he saw Mrs. Jones.
 I
The appellant argues that the state failed to show that a rape was committed or where the rape occurred. There is no merit to this contention. Rape is the unlawful carnal knowledge of a woman by a man forcibly and against her will. Harris v.State, Ala.Cr.App., 333 So.2d 871 (1976). The victim herself testified that the appellant had sexual intercourse with her and that such intercourse was accomplished by force and against her will and consent. This, if believed by the jury, was sufficient to sustain a conviction for rape. Williams v. State, Ala.Cr.App., 335 So.2d 249 (1976). Here there was conflicting testimony as to the number of times the victim was raped and the structure, be it a bridge or a boat dock, where one of the vile acts was committed.
Where there is legal evidence from which the jury can by fair inference find the accused guilty, this court has no right to disturb the verdict. The weight and probative value of the evidence presented a jury question. Moore v. State, 57 Ala. App. 668, 331 So.2d 422 (1976).
 "On appeal, an appellate court is not required, and it would be beyond its province, to determine whether there was proof beyond a reasonable doubt of defendant's guilt. Such a requirement would impair, if not destroy, the jury trial process." West v. State, 57 Ala. App. 596, 329 So.2d 653, cert. denied, 295 Ala. 427, 329 So.2d 658 (1976). *Page 1365 
Here there was substantial evidence tending to prove all the elements of the charge and the trial court was justified in overruling the motion to exclude. Conflicting and contradictory evidence always present a jury question and the verdict rendered thereon will not be disturbed on appeal unless the evidence palpably fails to make out a prima facie case. Bonnerv. State, 57 Ala. App. 462, 329 So.2d 152 (1976); Welden v.State, 57 Ala. App. 379, 328 So.2d 630 (1976). Any conflict as to where or how many times the victim was raped went to her credibility as a witness and therefore was for the determination of the jury. Chafin v. State, Ala.Cr.App.,333 So.2d 599, cert. denied, Ala., 333 So.2d 609 (1976).
 II
The appellant contends that the remarks, conduct and attitude of the trial judge deprived him of a fair and impartial trial. In particular two instances are complained of.
Immediately after the state had rested its case, the following occurred:
 "THE COURT: The State rests. Whom do you have, Mr. Wakefield?
"MR. WAKEFIELD: We have a motion to make.
"THE COURT: Very well. Read it into the record.
 "MR. WAKEFIELD: Well, your Honor, I would like to make the motion outside the presence of the jury. It won't take but just a minute.
 "THE COURT: All right, let the jury go to the jury room."
The appellant contends that from this remark it was obvious that the court had no intention of seriously considering his motion and was merely having it read into the record so that procedural requirements would be met. This court fails to see the impropriety of this remark. It is devoid of even potential prejudice to the appellant.
During direct examination of the appellant by his attorney, the trial court interrupted the examination twice to ask the prosecutor if he objected.
"Q. Did you rape her?
"A. No, sir.
"THE COURT: Do you object to that?
"MR. PRICE. Yes, I object to it.
 "THE COURT: That's a matter for the jury to determine. Don't consider that last question, whether or not he raped her."
* * * * * *
 "Q. Now, when you got in the boxcar, what did you all do?
 "A. Just laid there and talked, that was all, me and her. I told her I was from Tuskegee and everything, that I worked there in Tuskegee, for Mr. James Hopkins there in Tuskegee, the Clerk's office there in Tuskegee, and I worked in the Sheriff's office down there in Tuskegee, too.
"THE COURT: Do you object to that?
"MR. PRICE: I object to that.
 "THE COURT: Don't consider that voluntary statement."
Three times on cross-examination of the appellant the trial judge cautioned the witness that his remarks were not responsive.
The appellant argues that although these comments do not show an open hostility of the court toward the appellant, they certainly tended to prejudice the jury against the appellant's witnesses.
It is the court's duty to confine the evidence to the points in issue in order that the attention of the jury may not be distracted, or that their minds may not be withdrawn from the main issue and directed to matters which are foreign or of questionable or doubtful relevancy. Jones v. State, 17 Ala. App. 394,85 So. 830 (1920); Seibold v. State, 287 Ala. 549,253 So.2d 302 (1920) at 287 Ala. 562; Butler v. State, 55 Ala. App. 421, 316 So.2d 348 (1975) and cases cited therein at55 Ala. App. 427, giving examples of non-prejudicial comments by the trial judge. The trial judge has a duty to move the testimony expeditiously along. In light of the above quoted authorities, we *Page 1366 
find that the conduct and remarks of the trial judge lack the bias and prejudice attributed to them by the appellant. Moreover, even if it could be claimed that the trial judge was in error with regard to such statements, nothing is presented to this court for review. Appellant made no objections and invoked no ruling from the court. Lambert v. State, 55 Ala. App. 669, 318 So.2d 364 (1975).
 III
During the state's direct examination of one of the investigating police officers, the following occurred:
 "Q. (By Mr. Price) What was the purpose of your frisk, sir?
"A. The gentleman was frisked for a weapon.
 "Q. For a weapon. Okay, now, let me ask you, sir, did you have occasion to find a weapon on this Defendant?
"A. There was a pocket knife.
 "MR. PRICE: Mark this State's Exhibit No. 6, a pocket knife.
 "Q. I show you what has been marked State's Exhibit No. 6, and I ask you, sir, is this the knife that you found on the Defendant?
 "MR. WAKEFIELD: Judge, we are going to object, because there has been no testimony whatsoever that any knife was used, and this is strictly to show to prejudice the Jury, and there has been no evidence.
"THE COURT: What would be the purpose of that?
 "MR. PRICE: Your Honor, I'll withdraw it, but the only purpose is that Officer Thornell said that he frisked the Defendant for a weapon, and the knife is a weapon, and this is the weapon that was found.
 "THE COURT: I don't see the relevancy of that. I'll sustain the objection___
 "MR. PRICE: Surely — in fact, I will withdraw it. This exhibit, the knife, is withdrawn. It is shown as the weapon found, but I'll withdraw it."
The appellant argues that the remarks of the prosecutor were unduly suggestive and constituted an attempt on the part of the state to implant in each juror's mind the fact that there was something said about the knife being used in the rape. Placing the remarks in context, we cannot give them the construction urged by the appellant.
Moreover, the appellant has preserved nothing for review. Although objection was made and sustained to the actual introduction in evidence of the knife itself, no objection was ever interposed to any testimony or comment concerning the knife. The fact that a knife was found on the appellant was already in evidence without objection before the jury when the state attempted to introduce the knife itself. As such, the complained of remarks were not of a fact not in existence and unsupported by legal evidence. We cannot say that these remarks had a natural tendency to influence the finding of the jury or prejudice the appellant to such a degree as to constitute reversible error. Madison v. State, 55 Ala. App. 634,318 So.2d 329, cert. denied, 294 Ala. 764, 318 So.2d 337 (1975) and cases cited therein at 55 Ala. App. 641. Additionally, we point out that the prosecutor's remarks were made in response to a question by the court to explain relevancy.
While the appellant argues that it is absurd to label a pocket knife as a weapon, we direct his attention to Thomas v.State, 31 Ala. App. 1, 9 So.2d 150 (1942) where a penknife was held to be a deadly weapon.
 IV
The appellant's final argument is that the trial court erred in not drawing a new jury venire since the venire from which the petty jury was struck saw the appellant in handcuffs in the custody of a Sheriff's deputy. The venire apparently saw the handcuffed appellant as they were being lead into the courtroom. The appellant *Page 1367 
concedes that this observation "might have occurred by mistake".
Before reaching the merits of this argument we point out that no objection was made on this point until after the petit jury had been struck and duly sworn. As such, the objection was untimely. Furthermore, the appellant's counsel, as well as that for the state, had already announced that they were satisfied with the jury. By announcing "satisfied" the appellant waived any complaint or objection he might have had against the jury venire. Mackey v. State, 186 Ala. 23, 65 So. 330 (1914).
No reversible error was committed in bringing the appellant to the courtroom handcuffed prior to his trial. Boswell v.State, 290 Ala. 349, 276 So.2d 592 (1972); Blevins v. State,56 Ala. App. 115, 319 So.2d 734, cert. denied, 294 Ala. 753,319 So.2d 739 (1975); Moffett v. State, 291 Ala. 382,281 So.2d 630, cert. denied, 414 U.S. 1161, 94 S.Ct. 924, 39 L.Ed.2d 114
(1973).
Having carefully reviewed the entire record and finding no error prejudicial to the appellant, we are of the opinion that this case is due to be
AFFIRMED.
All Judges concur.