[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 243 
Appellant was indicted by a Madison County Grand Jury on a "felony-murder" charge under § 13A-46-21 (a)(3), Code of Alabama 1975. Appellant was subsequently convicted for the offense and the trial court set a prison term of 45 years.
The state's first witness was the victim's mother. Her son was 31 years old at the time of his death. The witness gave her son's address and testified that the last time she saw her son alive was on October 27, 1980. The next time she saw her son was on November 11, 1980, after he had been killed.
The state called Doyle Kimbrell to the stand. The witness knew appellant and was at the victim's home the night of the victim's death. Kimbrell testified that, on the night of November 9, 1980, his sister, Melissa Long, and Marcia Rogers, appellant's ex-wife, woke him up. The three ran into a bathroom where they heard a door being kicked in. Kimbrell testified that he also heard a gun trigger click. While in the bathroom, the witness heard appellant ask if anyone was in the bathroom. The three then walked out of the bathroom. In the living room were Bud Barr and Eddie Lang, two accomplices of the appellant. The three were searching the house for the victim when Barr yelled that he had found the victim in a back bedroom. Appellant and Barr kicked in the bedroom door. The witness heard appellant say, "You'll whip my _____, will you." The witness then heard a gunshot.
Eddie Lang ran out of the house followed by Barr and appellant. The witness noted that guns were taken from a gun rack in the house. After the three men left, the witness walked to the bedroom and found the victim's body.
On cross-examination, Kimbrell testified that, although Barr was armed, appellant only had a stick when he went in to the bedroom and when he left.
The state's next witness was James Parker, a detective for the Huntsville Police Department. Parker arrived at the scene of the accident at approximately 11:45 p.m. He noted that the victim had a bullet hole in his back. The victim was dressed only in a pair of cut-off jeans. Parker also identified various photographs of the victim and photographs showing the use of force on the back door of the victim's house and the victim's bedroom door. A hearing was then held outside the presence of the jury to determine if appellant was adequately informed of his Miranda rights before he gave Parker a statement.
The state called Marcia Rogers, appellant's ex-wife, to the stand. Ms. Rogers was at the victim's house the night of the killing. Ms. Rogers essentially corroborated Doyle Kimbrell's testimony. However, Ms. Rogers testified that all three men were armed: appellant with a pistol, Barr with a shotgun, and Lang with a rifle. She also identified the shotgun and rifle as belonging to the appellant.
On cross-examination, Ms. Rogers stated that some of her fellow employees at a local bar had threatened harm to her if she did not testify.
The state's next witness was Melissa Lang, Eddie Lang's ex-wife. She was dating the victim and also was at the victim's home on November 9, 1980. She corroborated the previous testimony of the occurrences that night. Ms. Lang further testified that she worked in a local bar in Huntsville as did the victim and Ms. Rogers. She was at the bar when appellant and the victim had argued and fought in the club's parking lot.
Grant Day, the victim's roommate, was called to the stand. Day left his house on November 9, 1980, around 7:30 p.m. He remembered that the back door was locked. *Page 244 
He had a shotgun and rifle in a gun rack in the house which were in the gun rack when he left. When he returned he noticed that the guns were gone. Day had not given appellant or his accomplices permission to enter his house or to take the guns on the night of the shooting.
Paul Kranca, a Huntsville police officer, was called to the scene at around 10:00 p.m. on November 9, 1980. He noticed that both the back and front doors were opened. He entered the house and found the victim in the back bedroom.
Paul Ballance, also on the police force, arrested the appellant in the early morning of November 10. He saw what appeared to be a patch of blood and human tissue on appellant's coat. At Barr's residence Ballance also found appellant's guns stuffed under Barr's mattress.
Dr. Joseph Embry was called to the stand. Dr. Embry worked for the State Department of Forensic Sciences in Birmingham. Dr. Embry performed an autopsy on the victim. He determined from the autopsy that whoever shot the victim was within three feet of the victim. At such a range, there is often a "blow back" of blood and tissue. The shot caused almost instantaneous death.
Greg Wilson, the victim's next door neighbor, was at home the night of November 9. That night he heard someone yell, "He's inside." He then heard a loud noise from inside the house which sounded like a concrete block being thrown against a storm door. A few moments later three men ran from the house. The witness heard one of the three say, "Good shot."
Deborah Tines, the manager of the local club where the victim worked, saw appellant arguing with the victim at her club on October 29, 1980. The victim was working as a doorman at her club. The victim and appellant went outside to the club's parking lot where a fracas ensued. The victim won the fight and appellant was told to leave and not to return. The witness later saw appellant in the club parking lot. Appellant was waving what appeared to be a pistol. Appellant asked for the victim, stating that he "had something for him."
Ron Adams, a Huntsville policeman, arrived on the scene at around 11:45 p.m. and noticed that the front door was open and that the back door was damaged and opened.
Brent Wheeler, a firearms criminalist, testified that wadding found on the victim's body was from a .12 gauge shotgun.
Roger Morris, a criminalist and serology coordinator for the Department of Forensic Sciences, analyzed the substances on the jacket appellant was wearing the night of the shooting. Morris detected the presence of blood and human tissue on the jacket.
Detective Parker was recalled to the stand. Parker talked with the appellant at the police station during the early hours of November 10. He advised him of his Miranda rights and asked if he understood them. He then asked if, with those rights in mind, he wished to talk. After appellant hesitated a few minutes because of the presence of other officers, the two moved to a more isolated area where appellant gave Parker a statement. Appellant told Parker that he only wanted to black the victim's eye and that he never intended to kill him. He claimed to have told the others that there was to be no shooting. Appellant further stated that he did not know that Barr was crazy and that Barr had shot the victim. He also stated that Barr was the one who kicked the back door in.
After the state rested, appellant presented his case.
Appellant called Eddie Lang to the stand. Lang denied that appellant or he ever returned to the club brandishing a pistol after appellant had fought with the victim. He also stated that the three of them were riding around together the night of the shooting and only went to the victim's house to talk with the girls there. They never intended to kill anyone.
Appellant took the stand in his own behalf. He had known Lang since 1976 but he had only known Barr since the night of the homicide. The three of them went to *Page 245 
the victim's house to talk with Ms. Rogers and Ms. Lang. Appellant stated that they did not go to the house to commit a crime.
According to appellant, he and Lang knocked on the front door while Barr went around to the back. He and Lang walked through the unlocked door and they did not ask for the victim. He attempted to talk with his wife when she ran out of the house. After appellant had followed his wife out of the house, Barr yelled that he had found the victim. Appellant walked back to the victim's bedroom where Barr had the victim at gunpoint. As appellant hit the victim with his fist, Barr shot past appellant hitting the victim. Appellant panicked and all three ran out of the house. Appellant stated that he never heard anyone say, "Good shot."
Appellant denied on cross-examination that he had asked the victim to go outside and fight in a bar parking lot on October 29. He admitted that the victim beat him up, but he only returned to the bar to see why and he was not armed. Appellant also admitted that the shotgun Barr had belonged to appellant. He could not remember how Barr got his gun. Appellant stated that Barr on his own took the guns from the gun rack.
Appellant's last witnesses were character witnesses who testified that appellant had a good reputation in the community for truth and veracity.
Appellant first contends that the state, in failing to comply with the trial court's motion to produce, denied appellant a fair trial.
The relevant portion of the trial court's order reads:
 ". . . It is therefore ordered by the Court as follows:
 "1. At least four (4) days prior to scheduled trial date the State will produce and allow defense counsel to inspect and copy any statement previously made by the defendant. Such statement previously made is (A) a written statement signed or otherwise adopted by the defendant or otherwise approved by the defendant; and (B) a stenographic, mechanical, or other recording or a transcription thereof, which is substantially verbatim recital of an oral statement by the defendant; and (C) any note, memorandum or other instrument in writing made by any person which was made at the same time or about the same time as any oral statement of the defendant was made. [Emphasis added.]
. . . . .
 "3. At least four (4) days prior to scheduled trial date the State will produce and allow defense counsel to inspect and copy any report of chemical analysis of any material seized at the scene of the homicide or taken from the defendant's person which is alleged to be evidence in the case or which the State intended to use at the trial of the case."
Appellant argues that the state should have notified appellant of an unrecorded oral statement made by appellant to Detective Parker and the original notes used by Detective Parker to write up appellant's statement. Appellant further argues the failure of the state to produce the statement of a prosecution witness made to police officers and test results from an analysis of appellant's jacket also constituted reversible error.
The record shows that appellant told Detective Parker that the substance on the jacket was catsup, not blood, when in fact an analysis of the jacket proved otherwise. This information was elicited outside the presence of the jury and well before appellant testified. Also, the oral statement was never recorded. The trial court refused to allow Parker to testify about this statement, but the trial court did allow the state to cross-examine appellant on this point.
The record shows that, while cross-examining Marcia Rogers, appellant requested and received a copy of the witness' statement to police. The record is unclear whether appellant received a copy of the analysis made on the jacket. However, this information was also produced before the toxicologist who made the test had testified and well before appellant presented his case. *Page 246 
Finally, the record indicates that Detective Parker did not have the original notes he used in writing up his formal report on what appellant had told him. After the trial court instructed Detective Parker to produce the notes, he testified that, after a diligent search, he could not find the notes. He further testified that he was not required to keep the original notes since he wrote up the statement only a few hours after he had talked to appellant. He also stated that his testimony substantially covered all information found in the notes.
Neither the lost notes nor Marcia Rogers' statement was used by the witnesses to aid them in testifying.
The defense basically asserts that it may not have called appellant to the stand if it had known about appellant's unrecorded oral statement concerning the bloodstains and if it had known of the test results showing the existence of blood on the jacket. This court recently addressed this issue in Jonesv. State, 396 So.2d 140 (Ala.Cr.App. 1981), a case factually similar to the present case. In Jones, this court in discussing the failure of the state to produce certain photographs covered by the trial court's motion to produce, states:
 ". . . We note from the motion to produce that it is extraordinarily lengthy and tends to cover almost every conceivable item, but that it lacks specificity. We can see, as appellant contends, the possibility that from a standpoint of advisable tactics there would have been a change in the way counsel prepared and presented the defendant's case if counsel had known before the trial started of the existence of the photographs, but we cannot say that the material evidence as to defendant's guilt or innocence would have been any different from what it was. We can also see that if counsel for the state had intentionally withheld the photographs from inspection by defendant's counsel in order to trap defendant's counsel into an unwise tactical maneuver, defendant's counsel would have just ground for complaint, but there is neither evidence nor a contention to that effect.
 "Although suppression of evidence to which a defendant is entitled in a criminal case may constitute a violation of the Due Process clause of the Fifth Amendment as amplified in coverage by the Fourteenth Amendment to the Constitution of the United States irrespective of whether the suppression has been intentional, the evidence must have a material bearing upon the question of the guilt or innocence of the defendant, which would exclude evidence that tends merely to cause defendant to overextend himself tactically.
 "`Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much. While expressing the opinion that representatives of the State may not "suppress substantial material evidence," former Chief Justice Traynor of the California Supreme Court has pointed out that "they are under no duty to report sua sponte to the defendant all that they learn about the case and about their witnesses." In Re Imbler, 60 Cal.2d 554, 569 [35 Cal.Rptr. 293, 301], 387 P.2d 6, 14 (1963). And this Court recently noted that there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795, 95 S.Ct. 2562 [2568] 33 L.Ed.2d 706. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' United States v. Agurs, 427 U.S. 97, 100, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342, 353 (1976).
 "The protection of the due process clause is primarily in the field of exculpatory rather than inculpatory evidence. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 "It should be said also that the photographs were seen by defendant's counsel before Dr. Roper testified and well before the defendant presented his evidence, including his own testimony." *Page 247 
None of the contested evidence is exculpatory. The closest any evidence comes to being helpful to appellant was his statement to Detective Parker that Barr shot the victim. However, appellant was tried under the "felony-murder" doctrine rendering the fact of who actually pulled the trigger an unnecessary element in the burden of proof. In fact, appellant moved to exclude Detective Parker's testimony concerning appellant's statement. The state's actions did not violate due process. See also Johnson v. State, Ala.Cr.App., 335 So.2d 663, cert. denied Ex parte Johnson, Ala., 335 So.2d 678, cert. denied 429 U.S. 1026, 97 S.Ct. 649, 50 L.Ed.2d 629; Jones v.State, Ala.Cr.App., 356 So.2d 728, cert. denied Ex parte Jones, Ala., 356 So.2d 735 (1978); Brager v. State, Ala.Cr.App.,380 So.2d 401 (1980).
Moreover, the judge's order did not include production of any unrecorded oral statement made by appellant. We pretermit consideration of a motion seeking enlightenment as to oral statements not recorded or transcribed. Lewis v. State, Ala.Cr.App., 335 So.2d 426, cert. denied Ala., 335 So.2d 429
(1976). Likewise, the order did not contain any reference to the statements made by witnesses other than appellant, and the trial court so acknowledged. The trial court cited Mack v.State, Ala.Cr.App., 375 So.2d 476 (1979) which held that the defendant was not entitled to statements made by witnesses other than defendant.
Finally, there is no evidence in the record to indicate that the state was ever in possession of the original notes made by Detective Parker and thus in a position to suppress the evidence. The record shows that the prosecutor specifically asked Detective Parker if, prior to the trial, the prosecutor had discussed the original notes with him. He replied that he had not. Apparently the state also did not know of appellant's unrecorded oral statement concerning the bloodstains until the trial. It cannot be said that appellant has been denied due process where there has been no showing that the evidence was suppressed by the state. Jones v. State, Ala.Cr.App.,356 So.2d 728, cert. denied Ala., 356 So.2d 735 (1978). Also, original notes are considered work product and as such a defendant has no right to their production. Butler v. State, 55 Ala. App. 421,316 So.2d 348, cert. denied, 294 Ala. 754, 316 So.2d 355, cert. denied, 423 U.S. 996, 96 S.Ct. 424, 46 L.Ed.2d 370.
Appellant also contends that the trial court improperly denied appellant's requested jury charge on manslaughter.
After deliberating for approximately 5 1/2 hours, the jury indicated that it wished further instructions on circumstantial evidence. Appellant then requested that the court also charge the jury on manslaughter as a lesser-included offense. The court gave appellant time to submit a written charge on manslaughter which read:
"A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person or
 "(2) He causes the death of another person under circumstances that would constitute murder, except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
This requested charge is a verbatim recital of § 13A-6-3, Code of Alabama 1975.
Although the charge requested by the defendant may be a correct statement of the law, the law is well settled in Alabama that it is not reversible error to refuse a charge which merely states an abstract principle of law without containing instructions as to the effect such doctrine has on the issues involved in the case. Craig v. State, Ala.Cr.App.,389 So.2d 177 (1980); Hudson v. State, Ala.Cr.App.,335 So.2d 208, cert. denied Ala., 335 So.2d 211 (1976).
Moreover, the trial court may within its discretion refuse a charge which is not applicable to the evidence presented at trial even though said charge is arguably a correct statement of law. Taylor v. State, *Page 248 
Ala.Cr.App., 408 So.2d 551, cert. denied, Ala., 408 So.2d 555
(1982).
During the trial of this case neither party contended that the crime which was committed was manslaughter pursuant to §13A-6-3. The state's case was a felony (burglary) murder charge without any assertions of any alternative offense. In defense, appellant merely denied committing a burglary or shooting the victim, blaming the act on someone else. He made no assertion and produced no evidence that he either "recklessly" caused the death of the victim or that he killed the victim during a "sudden heat of passion" caused by a provocation recognized at law. The only question presented to the jury was whether, during the commission of a burglary, appellant or another participant "did cause the death of Larry Frank Russell." Consequently, the trial court did not abuse its discretion in refusing appellant's requested charge. Taylor, supra.
Appellant also argues that the trial court erred in not explaining to Marcia Rogers her spousal privilege under §12-21-227, Code of Alabama 1975 which directs that a spouse may elect to refuse to testify against her husband. The record shows, however, that Ms. Rogers had divorced appellant before the trial. A defendant and his spouse must be married at the time the testimony is sought before the statute will apply. Exparte Arnold v. State, Ala., 353 So.2d 524 (1977).
Appellant claims that he and the witness, although legally divorced, had been living together and holding each other out as husband and wife and were thus joined in a common-law marriage. The trial court allowed appellant to present evidence of a common-law marriage out of the hearing of the jury. Appellant testified that, since the crime, he and the witness had only lived together since the Saturday before the trial, although they had had sexual relations throughout this period. In subsequently refusing appellant's request that the court instruct the witness of her privilege if she was still a spouse, the trial court implicitly found that no marriage existed at the time of the trial.
The determination of the competency of a witness is within the sound discretion of the trial court, and such discretion is of a well nigh irrevisable nature. Trammell v. State,53 Ala. App. 246, 298 So.2d 666 (1974); Segrest v. State,44 Ala. App. 673, 219 So.2d 890, cert. denied, 283 Ala. 718,219 So.2d 893 (1969). We find no abuse of this discretion.
Appellant argues that the state failed to show the required "knowing and intelligent" waiver of his constitutional rights before he made a statement to Detective Parker as mandated byMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966). Appellant bases his argument on the fact that appellant never expressly stated that he wished to waive each specific part of the Miranda warning.
Appellant was given an extensive and thorough reading of his rights and he subsequently stated that he understood those rights. Appellant was further asked if he understood that he was not being promised anything for his statement, nor was he being threatened. Appellant responded that he understood this. Finally, appellant was asked if, with those rights in mind, he wished to talk. Detective Parker testified that appellant did not immediately talk because of the presence of other officers. After the two men moved to a more isolated area, appellant began his statement.
An express waiver of Miranda rights is not a constitutional requirement per se. The totality of the circumstances determines whether an accused has knowingly and intelligently waived his rights. North Carolina v. Butler, 441 U.S. 369,99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); Love v. State, Ala.Cr.App.,372 So.2d 414 (1979); Sullivan v. State, Ala.Cr.App.,351 So.2d 659, cert. denied, Ala., 351 So.2d 665 (1977). As this court held in Lloyd v. State, 45 Ala. App. 178, 227 So.2d 809 (1969), quoting from State v. Kremens, 52 N.J. 303, 245 A.2d 313, "Any clear manifestation of a desire to waive is sufficient. The test is the showing of a knowing intent, not the utterance of a shibboleth. The criteria is not solely the *Page 249 
language employed but a combination of that articulation and the surrounding facts and circumstances." A review of the totality of circumstances convinces us that the appropriate constitutional procedures were followed.
Appellant's contention in oral argument that the state erred in not readvising appellant of his Miranda rights after a five-minute delay in making a statement is groundless. Andersonv. State, Ala.Cr.App., 339 So.2d 166 (1976).
Appellant's final argument is that the trial court allegedly neglected to send appellant's given requested charges with the jury for use during their deliberations. Appellant bases his argument on a passage from the record in which the trial court stated that, when the jury returned, it would have "the indictment, the forms of your verdict and the exhibits formally admitted."
This court cannot review appellant's contention. Appellant has not noted and we cannot find any objection made at the trial level or any ground in any post-trial motion. This issue was not preserved for our review. Herring v. State, Ala.Cr.App., 401 So.2d 296 (1981); Potter v. State, 46 Ala. App. 95, 238 So.2d 894 (1970).
We find no error in the record and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 568