LEIGH M. CLARK, Retired Circuit Judge.
A jury found this appellant, a male, guilty as charged in an indictment that he “did engage in sexual intercourse with” a named person “a female, by forcible compulsion, in violation of Section 13A-6-61 of the Alabama Criminal Code.” In due course, the trial court adjudged him guilty and sentenced him to life imprisonment without parole, it having been shown that he had been previously convicted of four felonies.
The only witness to the incident forming the basis for the crime charged was the alleged victim. The other witnesses testifying in the case were two officers of the Birmingham Police Department and one officer of the Bessemer Police Department. They testified on call of the State.
The following is the caption of the first issue presented in brief of counsel for appellant:
“THE TRIAL COURT ERRED IN DENYING DEFENDANT’S MOTION FOR A JUDGMENT OF ACQUITTAL IN VIEW OF STATE’S FAILURE TO ESTABLISH A PRIMA FACIE CASE.”
We are indebted to the attorney for each of the parties for strong arguments pro and con as to this issue. Counsel for appellant emphasizes what he considers conduct inconsistent with appellant’s guilt on the part of the alleged victim for hours and days prior to the actual incident made the basis of the charge of rape and conduct on her part thereafter, especially that which appellant’s attorney particularizes in his brief by the following part of the victim’s testimony:
“Q. Rape is against the law; isn’t it?
“A. Yes, I know.
*898 “Q. But you went home and undressed and went to bed?
“A. Yes.
“Q. Is that all you thought of what had occurred, if it occurred, the way you say it happened, that is all you thought of that was to go home and undress and go to bed?
“A. Yes. I was confused, something like this doesn’t happen every day.
“Q. You were so confused you would not call the police?
“A. I called the following morning.

“Q. Now you went into the house and you did what?
“A. I undressed and I went to sleep. “Q. Did you sleep soundly?
“A. I just—
“Q. Slept like you always sleep, right? “A. Yes.”
Appellant’s attorney further argues that “although she lived with her mother who was home on the night of the alleged incident, she never bothered telling her until immediately prior to the trial. It should be noted that proxecutrix had previously appeared at two prior hearings.” The argument on the issue in the brief of counsel for appellant concludes as follows:
“In closing, Appellant argues that the evidence presented by the prosecutrix is so flagrantly inconsistent and insubstantial as to vitiate its use to support the alleged offense. In effect, Appellant maintains that prosecutrix’s evidence palpably fails to make a prima facie case. Gulley v. State, Ala.Cr.App., 342 So.2d 1362. If the integrity of the legal standard requires the State to put forth a prima facie case is to remain viable, the instant case should be reversed.”
Gulley v. State, Ala.Cr.App., 342 So.2d 1362 (1977), holds to the contrary to the contention of appellant. In Gulley v. State, at 342 So.2d 1364, is the following:
“... The victim herself testified that the appellant had sexual intercourse with her and that such intercourse was accomplished by force and against her will and consent. This, if believed by the jury, was sufficient to sustain a conviction for rape. Williams v. State, Ala.Cr.App., 335 So.2d 249 (1976).”
In accordance therewith, we hold that a jury question was presented as to defendant’s guilt and the trial court was correct in denying defendant’s motion for a judgment of acquittal, as shown by the testimony of the victim that while defendant was in her automobile with a knife in his hand, the following occurred:
“Q. What happened after he grabbed you, with the knife.
“A. After he grabbed me I got in the back seat. And after I was in the back seat that’s when he came through the middle seat and got in the back.
“Q. Through the inside of the car?
“A. Uh-huh (indicated yes).
“Q. Where were your keys?
“A. Oh, he took my keys. After — after — after he made me stop the car he took my keys, they were in his pocket.
“Q. And what happened after that, please, ma’am?
“A. He made me undress and that’s when he raped me.
“Q. And by rape, do you mean that this man, Mr. Richard Edward—
“MR. CHESTNUT: I object, leading.
“THE COURT: Overruled.
“Q. (By Ms. Smitherman): Placed his private parts in your private parts?
“A. Yes.
“Q. Was that against your will?
“A. Yes.
“Q. Tell the Ladies and Gentlemen of the Jury whether or not this was in Birmingham, Jefferson County.
“A. Yes.
“Q. Do you have a judgment, Ms. Taylor, as to what time this was?
“A. When we arrived?
“Q. After.
“A. After?
“Q. When you stopped the car and got into the back seat?
“A. Okay. It was around 12:15.
*899 “Q. What happened after he entered your private parts with his private-parts?
“A. He forced me to have sex with him. And then we were just talking.
“Q. What was he saying to you?
“A. He was just saying oh — he was saying that I should have cooperated in the beginning because this was what I wanted anyway.
“Q. Was that what you wanted?
“A. No.
“Q. What happened after you got through, please, ma’am?
“A. Afterwards — afterwards, he got out and pulled his clothes up and I put mine on, too.
“Q. Do you have a judgment as to how long you were in the back seat of the automobile?
“A. About 20 minutes.
“Q. After you got out and put your clothes on, what happened next?
“A. He gave me my keys back and told me to take him home.
“Q. What did you do?
“A. I started the car and I took him to the corner of his house.
“Q. And what happened after that? Did he say anything to you or you to him when he got out?
“A. He was saying that he would contact me in a few days and that he wanted to see me again.
“Q. Where did you go after you put him out?
“A. After he got out I went home.
“Q. To Bessemer with your mother?
“A. Yes.
“Q. In your best judgment what time did you arrive?
“A. Around 1:30.
“Q. What did you do when you got home?
“A. When I got there I — when I got home, I undressed and I went to sleep. When I got up I took a shower, the following morning. It was already late, I had to get up around six. When I got up I took a shower and got ready to go to school.
“Q. Did you talk with anyone at home?
“A. No.
“Q. Did you tell your mother what happened?
“A. Not then, no.”
By the next issue presented by counsel for appellant, the contention is made that the trial judge erroneously denied defendant’s motion to recuse himself on the ground that he had “manifested personal bias” against defendant. The transcript shows that the trial judge had previously revoked the probation of defendant that had been granted him on a judgment of conviction and sentence for assaulting a police officer with a deadly weapon and based the order revoking the probation upon the incident made the basis of the instant case. There was an appeal of the judgment revoking appellant’s probation, which judgment was affirmed by this Court in Lake v. State, Ala.Cr.App., 448 So.2d 485 (1984), and in which is found at 448 So.2d 486 a recital of the finding of facts in part as follows:
“... The prosecutrix testified that defendant forcibly raped her (knife to her throat). Prosecutrix knows the defendant and no problem with identification. Excellent likihood [sic] that the defendant will be convicted of Kape First Degree, the said defendant is subject to punishment to life without parole because of his prior felony convictions.”
We fail to find in the record proper or in the transcript of the proceedings any basis for a conclusion that the trial judge “manifested personal bias against” the defendant. We repeat what was stated in Koch v. State, Ala.Cr.App., 401 So.2d 796, 801, cert. denied, Ala., 401 So.2d 801 (1981):
“... The bias or prejudice that will disqualify a judge must be ‘personal’ as distinguished from ‘judicial’ bent; the disqualifying bias or prejudice ‘characterizes an attitude of extra-judicial origin, derived coram non judice.’ Ex parte White, 53 Ala.App. 377, 300 So.2d 420, cert. denied, 293 Ala. 778, 300 So.2d 439 (1974); Pannell v. State, Ala.Cr.App., *900 356 So.2d 219, cert. denied, 356 So.2d 222 (1978)....”
As a final contention for a reversal, counsel for appellant urges in his brief that the trial court should have granted defendant’s motion for a new trial by reason of a ground thereof that one of the jurors trying the case knew the defendant’s father, Richard E. Lake, Sr., but that he did not respond to questions asked voir dire of the panel of jurors from which the jury was selected to try the case as to whether any of them knew “Richard Lake, Jr., or his father, Richard Lake, Sr., or anyone in the Lake family.” The particular juror testified on call of defendant on the hearing of the motion for a new trial that soon after she sat on the jury that tried defendant, she was talking to some of her acquaintances when the question was raised as to whether she knew the defendant or defendant’s family and that she said that she had noted that on the second day of the trial a man appeared in court that she had seen before and that she concluded was defendant’s father. We now quote the last words of her testimony on direct examination by defendant’s attorney:
“Q. Ms. Smith, had you had any relationship with Richard Lake, Jr., at all?
“A. No, sir, never seen that man until I came to court.
“Q. Did the fact that you may have known or did not know Richard Lake have any impact on your decision in the jury role?
“A. Repeat that again, now.
“Q. Did the fact that you knew or did not know Mr. Lake have an impact on your decision?
“A. Which Mr. Lake?
“Q. Either Richard Lake, Sr., or Richard Lake, Jr.
“A. It didn’t have no impact at all because I didn’t — I just recognized that man’s face and didn’t know who he was related to.
“Q. And none of that affected your decision — no.
“A. No.
“Q. —with respect to—
“A. No.
“Q. .■■■ — your vote in the verdict?
“A. No.”
Appellant’s criticism of the particular juror as a ground for a new trial is without merit, and the trial court was correct in overruling defendant’s motion for a new trial.
Appellant presents no issue that entitles him to reversal, and we find no obvious error prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.