After trial at nisi prius pursuant to an indictment charging burglary in the first degree of Thomas Aaron Ward's dwelling, appellant was found guilty as charged and sentenced to twenty years' imprisonment.
The state's case consisted of the testimony of three witnesses: Ward, the victim and state's only witness to the crime who testified, and two members of the Opp Police Department, Charles D. McLeMore and Jenkins Logan. Ward's testimony tended to show that on the night of December 7, 1981, the defendant, aided by an unidentified female and male, burglarized the home of Ward.
The victim lived in Opp with his invalid wife and brother-in-law who was deaf. He had retired about 8:00 p.m. on the seventh and was awakened by the doorbell at approximately 11:15 p.m. After turning on the lights Ward opened the door and the defendant pushed him back and entered the home. The unidentified female and male also entered. The female, who was armed with a pistol, demanded money from Ward as the defendant pushed him into the house. Soon after the entry the female turned off the lights, and the defendant *Page 1353 
instructed her to shoot Ward if he moved. The defendant, who was wearing gloves, pushed the victim to the floor in the living room and held him down. He demanded money of Ward and called him a liar when he said he had none. The defendant threatened to blackmail the victim if he summoned the police. The unidentified male went into other rooms of the house. Later Mrs. Ward's watch was found to be missing. After the intruders left, Ward went to a neighbor, who took him to the police.
Officer McLeMore went to Ward's house after the burglary. In one of the bedrooms he found the bed rumpled and drawers pulled out with their contents disarrayed. On the dining room table, he found the telephone, which had been severed from the wall during the burglary, but was unable to lift any prints from it. A short time later, during the early morning hours of the eighth, Ward accompanied an Officer Mike Naro of the Opp Police Department to an establishment named "Popeye's Corner." There, in the presence of Captain Logan, he identified the defendant, who was standing outside with several other people. The defendant was taken into custody. When questioned he denied being involved in the burglary. A search of the defendant did not disclose a watch or gloves.
The defense of alibi was presented through the testimony of the defense witnesses, including that of the defendant. Basically, they stated the defendant was at "Popeye's Corner" from approximately 7:30 p.m. on the seventh until he was arrested by the police. There were, however, some minor conflicts as to who was present at what time and what certain people were doing.
 I
One of appellant's three contentions of error on appeal is that the trial court erred in denying his motion for new trial in that there was insufficient evidence to support the conviction as to the identification of the appellant as one of the perpetrators.
The victim, who was seventy-four years of age, was the only person who identified the defendant as one of the burglars. He admitted he did not have his glasses on when the burglary occurred. However, he maintained he could see almost as well without his glasses and identified the defendant in court without wearing them. Further, the victim testified that while the defendant had him on the floor their faces were close together. The unidentified female also turned off the house lights. There was, however, light, from a street light, shining through the window from across the street according to the victim. The victim went into "shock" about 2:00 a.m. on the eighth, after he had identified the defendant, and was admitted to a hospital. Ward testified he was not in shock when he identified the appellant but that he was "just nervous, scared."
Evidence is to be taken in the light most favorable to the state in determining motions concerning the sufficiency of the evidence. The court should not substitute its judgment for that of the jury in determining the credibility of witnesses. Only when a witness physically could not have observed, or events could not under the laws of nature have occurred, may a trial judge substitute his judgment. United States v. Cravero,530 F.2d 666 (5th Cir. 1976); United States v. Palacios, 612 F.2d 972 (5th Cir. 1980); and Ex Parte Nice, Ala. 407 So.2d 874. Shortly after the offense, the victim made an identification of the appellant and named him in his statement to the police; even though he testified under cross examination at trial that he did not know the appellant's name until the police told him. Further, he identified the appellant in court. It was not physically impossible that the victim observed the appellant and the events he testified about were possible under the laws of nature. A jury question was presented and the trial judge was correct in not interfering with the jury's decision. Barker v. State,55 Ala. App. 332, 315 So.2d 129. *Page 1354 
 II
It is maintained that the trial court erred in not allowing the defense to examine Ward's statement to the police.
During cross examination of Logan the defense attorney asked for the statement. Logan testified he did not take the statement and the court sustained the state's objection to the defense's motion to produce the statement. Counsel for appellant then asked the court to be allowed to ask where the statement was and Logan stated that the other officer had it. The assistant district attorney then said: "I have got a copy of it. I will let you look at it." The record reflects there was then a brief interruption in the proceedings. After this line of questioning, appellant's attorney did not recall McLeMore, who had earlier testified that Ward made an "official statement" to him and named the defendant as one of the perpetrators. Further, he did not recall the victim who had earlier testified that he told the officer what he had testified to in court. Earlier in the trial Ward, under cross examination, said that he did not know the name of the defendant until the police told him.
To secure production of a statement of a witness, it must be shown that it was in writing prepared by him or at his instance and signed or authenticated by him. Further, it must be shown that it is essential for cross examination and to guilt or innocence. Redus v. State, Ala.Cr.App., 398 So.2d 757. These requisites were not met by the appellant. The court did not abuse its discretion in denying the production of the statement. Further, the record indicates that the appellant was allowed to see a copy of the statement and that he recalled for further examination neither the officer who took it nor the victim who made it. Therefore, even if there had been error, it would have been harmless.
 III
Appellant asserts the trial court erred in not allowing him to testify that the victim had solicited his assistance in procuring young women for sexual favors. He contends this would have impeached the victim's testimony and would have showed motive on the part of the victim to falsely accuse him.
The victim testified that he had not known the appellant, though he had seen him several times as he passed "Popeye's Corner." He denied he had ever been in an automobile with him. The appellant testified that he had seen the victim nine or more times, talked with him and that they always met around "Popeye's Corner." He further testified that they had ridden in an automobile together talking. After the appellant testified about their having had conversations his attorney asked what they discussed and the court sustained the state's objection to the question. Counsel for the appellant then made an offer of proof that it concerned the procurement of young women and the court again sustained the objection. Appellant then testified that the last conversation he had with Ward was about a week before he got arrested and that they had gone to Elba. The state's objection was sustained to a question concerning what happened in Elba.
A witness may not be impeached on an immaterial matter. Ciervov. State, Ala.Cr.App., 342 So.2d 394, and Williams v. State, Ala.Cr.App., 383 So.2d 547. It is the duty of the trial judge to limit the evidence to matters in issue so that the jury is not distracted from the main issue or to questions which are of doubtful relevancy. Gulley v. State, Ala.Cr.App., 342 So.2d 1362. Further, erroneous exclusion of evidence is rendered harmless by subsequent disclosure of testimony of substantially the same effect. Smith v. State, Ala.Cr.App., 393 So.2d 529.
The central issue presented at trial was that of identity. It was the trial judge's duty to limit the evidence to the matters in issue. The determination of what evidence was relevant was within the trial court's discretion. The court's ruling concerning conversations between the appellant and the victim which occurred a *Page 1355 
week or more before the burglary should not be disturbed on appeal since it was attempted impeachment on an immaterial matter. Further, substantially the same testimony was brought out through the appellant's testimony that he had previously talked and ridden in an automobile with the victim, contrary to the victim's testimony. Therefore, even if there had been error, it would have been harmless.
From the examination of the issues raised on appeal we conclude error is not made to appear.
The foregoing opinion was prepared by Hon. JOSEPH J. JASPER, Circuit Judge, temporarily on duty on the Court pursuant to the authority contained in the provisions of Section 6.10 of Constitutional Amendment No. 328, of the Constitution of Alabama 1901, as amended; the Court has adopted his opinion as its own.
The judgment below is hereby
AFFIRMED.
All the Judges concur.