745 So.2d 885 (1998)
T.D.T.
v.
STATE.
CR-97-1071.
Court of Criminal Appeals of Alabama.
October 23, 1998.
Rehearing Denied December 18, 1998.
*887 William M. Dawson, Jr., Birmingham, for appellant.
Bill Pryor, atty. gen., and Hense R. Ellis II, asst. atty. gen., for appellee.
COBB, Judge.
T.D.T. was convicted of first-degree sexual abuse, a violation of § 13A-6-66, Ala. Code 1975, and two counts of child abuse, violations of § 26-15-3, Ala.Code 1975. He was sentenced to 10 years' imprisonment on the sexual abuse conviction and to 10 years' and two years' imprisonment respectively, on the child abuse convictions. His sentences are to be served consecutively, so that he would serve 22 years in prison.
T.D.T. was indicted for sexual abuse and child abuse with respect to his minor daughter, and for child abuse with respect to his minor son. T.D.T.'s son testified that his father routinely punished him by beating him with a belt. (R. 59.) He testified as to the following beatings at the hands of his father that occurred when he was 10 and 11 years old: (1) his father would whip him 20 times with a belt when he crashed his plane on a video game and would hit him an additional 10 times if he moved while he was being whipped (R. 61-62); (2) his father stomped on and broke his Nintendo video game and whipped him with the remote control of the Nintendo when he beat his father at a video game (R. 63, 110); (3) his father threw him to the ground and hit and kicked him when the child's fishing line broke (R. 65-67); (4) his father hit him and kicked him when he lost the keys to his father's truck and made him crawl through the woods on his hands and knees looking for the keys, kicking him and calling him a "stupid son of a bitch" as he crawled (R. 68-72); (5) his father kicked him, struck his head against a concrete floor, and called him a "stupid son of a bitch" when he broke some plexiglass (R. 72-74); (6) his father gave him thirty "licks," broke dishes, and threw his supper in the sink when he failed to do chores around the house (R. 84-86); and (7) as punishment for not playing well, his father refused to let him have a drink of water after a competitive basketball game (R. 83). After the beatings, his father would tell him that if he told his mother, he would get 50 more "straps." (R. 76.) T.D.T. often made his son lie down over the sofa with his pants down while he administered these whippings. (R. 61.) T.D.T.'s son testified that his father would get so angry that he would slobber and foam at the mouth. (R. 79.) He also testified as to beatings that his father gave his sister.
*888 Additionally, T.D.T.'s son testified that he recalled his father often summoning his sister in the mornings to get into bed with him. He testified that he always had to bring his father breakfast in bed and that he regularly saw his sister in bed with his father in the mornings. When his sister was in bed with his father, his father would often tell him to bring him his belt and would then tell him to leave the room. (R. 98-105.)
T.D.T.'s son finally told his mother that he "couldn't take it no more," and she confronted T.D.T. She informed T.D.T. that their daughter had reported the abuse to a teacher. In response, T.D.T. "turned to [his daughter] and whipped her real bad" and told all of them that he hated them. T.D.T. then threatened to shoot the entire family, including himself. (R. 94-96.) The mother and two children escaped one morning by pretending to do laundry; they were actually putting clean clothes in the laundry baskets, which they then put in the car. (R. 97, 166.)
T.D.T.'s daughter, who was 10 years old at the time of trial, testified that her father would call her to come "snuggle" with him in bed almost every morning. If she did not, "he would whip [her] with a big thick belt." (R. 140.) She testified that her father would rub her stomach and "would push [her] panties down and rub." (R. 146-47.) She testified that her father would be naked under the covers and that he would rub his penis "around on [her] backside." (R. 142-44.) Her father would threaten to hit her with a belt if she moved. (R. 144.) She testified that on one such occasion, when she was nine years old, she saw and felt a creamy white substance on her body near her backside. (R. 145, 152.) If her mother came into the room when her father was "snuggling" with her, her father would quickly move his hand away. He would whip her if she got out of the bed to go to the bathroom. (R. 151.) She further testified that her father would make her mother come into the room to watch them, or "study it" as he called it. (R. 148.)
T.D.T.'s daughter also testified as to whippings from her father that would cause bruises and red marks and that would leave her sore. (R. 155.) She testified that her father would whip her with a belt if she did not return to his bed after he finished breakfast in bed. Even though T.D.T. would require his wife to watch him and his daughter snuggle, T.D.T. threatened to whip the daughter if she talked with her mother about it. (R. 152.) T.D.T.'s daughter further testified that she was whipped on her legs and bottom for (1) not picking newspapers up off the floor; (2) not drinking eggnog; and (3) forgetting to pick up a washcloth to put in the laundry. (R. 152-56.)
The children's mother testified that she had been married to T.D.T. for 17 years, but that they no longer slept in the same bedroom. (R. 207.) She testified that she recalled T.D.T. calling their daughter in to "snuggle" with him in the mornings, and that on those occasions, her husband and daughter would lie in the bed together. She further testified that her daughter had a hormone disorder that caused her to develop breasts and pubic hair at age five or six. (R. 208.) She testified that she did not view T.D.T.'s contact with their daughter as sexual, but, rather, as a means of control, similar to when T.D.T. would force his son to sit and play a video game with him even though the boy would beg to get up. (R. 220, 252.) However, she testified that when she would tell her husband that she did not like the "snuggling," he would snap at her or hit her. (R. 214.) She testified that T.D.T. "would want [her] to stand there and look at [him and their daughter in bed]," or "`study them,' as he called it." (R. 215-16.) T.D.T.'s wife told T.D.T. that their daughter was getting older and was uncomfortable with the "snuggling." She testified that "[T.D.T.] was having to whip [their daughter] more and more to get her to come in there or to *889 whip her to make her stay in there." (R. 253.)
T.D.T.'s wife also testified that her husband had frequently beaten the children with a belt, often kicking them while taking them to their room for a whipping. (R. 220, 224.) T.D.T. frequently called their son a "stupid son of a bitch." (R. 224-25.) She confirmed that T.D.T. often whipped their son for not playing a video game well, and that he would scream at their son that "he hadn't tried." She could hear T.D.T. screaming as he whipped their son, "You moved. That one didn't count." (R. 221.) She testified that on one occasion, T.D.T. hit their son in the neck with a belt buckle, causing a large purple blood blister. (R. 222-23.) On another occasion, T.D.T. whipped their son because he could not catch 20 football passes in a row. (R. 220.) T.D.T. would hit his wife or would hit the children harder if she tried to intervene (R. 223-34.) T.D.T.'s wife further testified that her husband once tore apart a lighted Santa Claus Christmas decoration to punish the children. (R. 231.) He also once held a gun on his family. (R. 225-26.) She testified that T.D.T. threatened to kill the entire family, including himself, when she told him that the abuse had been reported and that she and the children "were not covering anymore." (R. 239-40.)
T.D.T. testified in his defense that he had never kicked his son or banged his son's head on a concrete floor. He testified that discipline was his responsibility, but that he used spankings only as a last resort. (R. 384.) He testified that his daughter would sometimes crawl into bed with him, but he denied ever touching his daughter with his private parts or in any other inappropriate way.
T.D.T. presents six issues on appeal.

I.
T.D.T. contends that the trial court erred in failing to give a jury instruction on assault in the third degree as a lesser offense to child abuse. He argues that because "most of the allegations involving the male child ... were related to whippings with a belt," and because the female child "[a]t most claimed of being whipped with a belt and receiving red marks as a result," T.D.T. "most certainly should have received the lesser charge of [third-degree] assault." (Appellant's brief, p. 20.)
We first set forth the following elements of assault in the third degree and the elements of child abuse. The offense of assault in the third degree is defined as follows:
"(a) A person commits the crime of assault in the third degree if:
"(1) With intent to cause physical injury to another person, he causes physical injury to any person; or
"(2) he recklessly causes physical injury to another person."
§ 13A-6-22(a), Ala.Code 1975. Section 26-15-3, Ala.Code 1975, sets out the offense of child abuse as follows:
"A responsible person, as defined in Section 25-15-2, who shall torture, willfully abuse, cruelly beat or otherwise willfully maltreat any child under the age of 18 years shall, on conviction, be punished by imprisonment in the penitentiary for not less than one year nor more than 10 years."
"Abuse" is defined as
"[h]arm or threatened harm to a child's health or welfare. Harm or threatened harm to a child's health or welfare can occur through nonaccidental physical or mental injury, sexual abuse or attempted sexual abuse or sexual exploitation or attempted sexual exploitation."
§ 26-14-1(1), Ala.Code 1975.
This court has held that assault in the third degree may be a lesser offense to child abuse. See Updyke v. State, 501 So.2d 566, 567 (Ala.Cr.App.1986); Miller v. State, 565 So.2d 275, 276 (Ala.Cr.App. 1989). Citing Ex parte Jordan, 486 So.2d 485 (Ala.1986), the court in Updyke held that "it is improper to find that a set of *890 facts establishing the commission of an offense can never also establish the commission of a lesser included offense." 501 So.2d at 568. Relying on this proposition, this Court held in Updyke that "[d]espite the fact that child abuse does not require a showing of physical injury," the "facts showing the commission of child abuse could show also the commission of the offense of assault in the third degree." Id. In certain cases, the jury should be "allowed to determine whether the offense of assault in the third degree was committed." Miller v. State, 565 So.2d 275, 276 (Ala.Cr.App.1989).
A court may, however, properly refuse to charge on a lesser included offense "when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or when the requested charge would have the tendency to mislead or confuse the jury." Chavers v. State, 361 So.2d 1106, 1107 (Ala.1978). Furthermore, under § 13A-1-9(b), Ala.Code 1975, "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Moreover, the determination of whether or not to give an instruction on assault in the third degree as a lesser offense to child abuse is to be made on a case-by-case basis. See Mosely v. State, 628 So.2d 1041, 1043 (Ala.Cr.App.1993) (an accused is not always entitled to instruction on a particular offense even though the offense is a lesser included one to the offense charged). Here, the trial court engaged in extensive discussion with defense counsel[1] regarding under what circumstances a beating involving a minor victim and a "responsible person" would constitute assault in the third degree rather than child abuse:
"THE COURT: Now, would you say there would be any circumstances when he could kick him and it would be assault in the third degree rather than child abuse?
"[DEFENSE COUNSEL]: I think first off, Your Honor, let me say that I expect there to be testimony that we did not kick him.
"THE COURT: I thought
"[DEFENSE COUNSEL]: But assuming that's the State's position for a moment, yes, sir, I think that it could be. I think it goes to the intent and how you kick and how, you know
"THE COURT: Give me an example of what you're talking about. Now, as you know, this thing goes on and talks about somebody having temporary care or custody or responsibility for a child.
"[DEFENSE COUNSEL]: That's correct.
"THE COURT:and it wouldn't be child abuse.
"[DEFENSE COUNSEL]: I think if your child was down and you told your child to get up and he wouldn't, and you walked up and you thumped him on the rear end with your foot like that (indicating)
"THE COURT: Yeah.
"[DEFENSE COUNSEL]:I don't think that's child abuse. The same thing if I spank my child, you know
"THE COURT: Let me ask you this: Would that be third
"[DEFENSE COUNSEL]: I don't think that's child
"THE COURT: Let me ask you this: Would that be third-degree assault?
"[DEFENSE COUNSEL]: I think if the Court finds
"THE COURT: No, no. Not what I find. I don't find facts.
"[DEFENSE COUNSEL]: Would I think it would be third-degree assault? No, sir, I would claim that that's not third-degree assault either.
"THE COURT: Exactly.
"[DEFENSE COUNSEL]: But I think that third-degree assault can and should *891 be, in some instances, a lesser included offense.
"THE COURT: It can be. But I'm just saying here, we eitherwe've either got this man intentionally kicking this kid, kicking and hitting him about his body and if he's doing thator willfully mistreating him. Really, it says maltreat. Then he's guilty of child abuse. And if they don't believe it, they can turn him loose.
"But what you're talking about is this child on the floor, and you just walk over and tap him with your toes. That wouldn't be assault third degree, would it?
"[DEFENSE COUNSEL]: I think that assault third is lesser included offense, though.
"THE COURT: Well, you keep saying that, but how?
"[DEFENSE COUNSEL]: I think because
"THE COURT: What does assault third degree require? Get the Code and read it.
"[THE STATE]: It's with intent to cause physical injury, he causes physical injury, is what they
"THE COURT: Well, I understand. But in this case we're saying he's without injury.
"[DEFENSE COUNSEL]: A person commits the crime of assault in the third degree if, with intent to cause physical injury to another person, he causes physical injury to any person.
"THE COURT: All right.
"[DEFENSE COUNSEL]: He recklessly causes physical injury to another person.
"THE COURT: Um-hum.
"[DEFENSE COUNSEL]: A deadly weapon, that's notor a peace officer performing a lawful duty is not.
But if he, with intent to cause physical injury to another person, causes physical injury to any person. So if the jury were to find that he intended to injure him by kicking him
"THE COURT: No, they don't have to have injury as I understand, under Updyke v. State, 501 So.2d 566. All that needs to be shown is thatyou, know, that he was beaten with someI would assume some intention to do certain things. You don't have to injure him.
"[DEFENSE COUNSEL]: I understand. But the same fact situation that could lead to a verdict for child abuse could also lead to a verdict for assault third degree.
"THE COURT: But I'm asking you to tell me how. Just explain it to me. You attempted by telling me if he went over and tapped him with his toes or with the point of his shoe, that would be assault third degree. I don't agree with you. If he did nothing more than that, he's not guilty.
"[DEFENSE COUNSEL]: If the CourtI mean, if the jury were to find that he had spanked him harder or longer than he should have, that could be assault in the third degree. You know, it may be
"THE COURT: I don't know what you mean by spank. Would you tell me?
"[DEFENSE COUNSEL]: Well, there's testimony that he would spank him for 20 licks.
"THE COURT: With a belt?
"[DEFENSE COUNSEL]: With a belt.
"THE COURT: And on his buttocks?
"[DEFENSE COUNSEL]: I think he's testified buttocks and legs.
"THE COURT: About his body?
"[DEFENSE COUNSEL]: Yes, sir.
"THE COURT: I just think that would be confusing.
"THE COURT: I just think that would be confusing. I think ... if this jury is not convinced beyond a reasonable doubt that this man intentionally kicked this child and intentionally hit him about his body and really cruellyI mean did it cruelly, then turn him loose. If they *892 think ... that if he didn't cruelly beat him and maltreat him by kicking him and hitting him with a belt beyond what is normal spanking of a child or disciplining of a childit's got to go beyond that.
"Then if they believe he was just doing what a father does or a disciplinarian does to a child that's accepted, then he's not guilty, period, from the evidence, if they believe that, and are not convinced beyond a reasonable doubt that he just cruelly and willfully mistreated him by beating him and kicking him about his body.
"That would be mythat would be my instruction to the jury. If they are not convinced beyond a reasonable doubt that he did those things, then he should be acquitted on that.
"And I would say the same thing on [the daughter] as to that charge."
(R. 328-35.)
In a lengthy discussion at trial over the propriety of a jury instruction on third-degree assault, the trial court noted that an instruction on third-degree assault in this case could tend to confuse the jury. We agree. We also agree with the trial court's determination that an instruction on third-degree assault was not warranted under the facts of this case. While such an instruction may be necessary in some cases, it is not mandated in every case.
As noted earlier, this court has held in two previous child abuse cases, Updyke and Miller, that the jury should have been instructed as to assault in the third degree. See Updyke, 501 So.2d at 568; Miller, 565 So.2d at 276. Updyke is factually distinguishable from the case at hand, however, and, unfortunately, the opinion in Miller does not recite the particular facts of the case. In Updyke, the appellant was convicted of child abuse for beating his seven-year-old son with a wet belt. See Updyke, 501 So.2d at 567. Judging from the facts contained in the opinion, the conviction was based upon a single beating, rather than a series of beatings. See id. The beating by the appellant was allegedly the result of the child lying to the appellant about his grades in school. See id. We reversed the appellant's conviction based upon the trial court's failure to instruct the jury on assault in the third degree. See id. at 568.
The facts of this case can be easily distinguished from the facts of Updyke. First, Updyke involved a solitary incident of abuse. In sharp contrast, the evidence presented in this case indicates that the two victims were subjected to a pattern of cruel and abusive behavior by their father over an extended period of time. Second, the abuse in Updyke was a purely physical beating. Here, the repeated abuse entailed much more than physical injuries. The abuse by the appellant involved not only physical beatings but also mental and sexual maltreatment, including whipping the children with a belt, threatening the children with a gun, stomping on the children's toys, calling the son a "stupid son of a bitch," forcing the daughter to "snuggle" with the appellant so that he could rub her "private parts," and threatening the children with future beatings if they told their mother about the abuse.
It is clear from reviewing the record in this case that the appellant was either guilty of child abuse or he was guilty of no crime at all. It was undisputed that the appellant, as the victim's natural parent, was a "responsible person" as that term is defined in § 26-15-2, Ala. Code 1975, and that the victims were under the age of 18. If the jury believed the children's testimony regarding their father's systematic cruel and abusive treatment of them, a finding of guilty as to the charges of child abuse was the only option. On the other hand, if the jury did not believe the children's testimony, its only choice was to acquit the appellant. "When the evidence clearly shows the appellant is either guilty of the offense charged, or innocent, the charge on a lesser included offense is not necessary or proper." Perry *893 v. State, 455 So.2d 999, 1002 (Ala.Cr.App. 1984); Moton v. State, 524 So.2d 381, 383 (Ala.Cr.App.1988). If one of the disputed issues had been whether the appellant was a responsible person, see § 26-15-3, Ala. Code 1975, a jury charge on assault in the third degree would have been proper. In this case, however, it was undisputed that the appellant was a responsible person as that term is defined by § 26-15-2, Ala. Code 1975.
It follows that, in the present case, the trial court's refusal to charge the jury on third-degree assault was not error. While assault in the third degree can be considered a lesser included offense of child abuse in some cases like Updyke, this court declines to hold that it is in this case. As stated earlier, the decision to instruct the jury on lesser included offenses depends upon the facts of the particular case. See Mosely, 628 So.2d at 1043. Moreover, while it goes too far to state that a set of facts can never also satisfy the elements of a lesser included offense, it is also incorrect to suggest that in certain cases, such as child abuse situations, the facts will always warrant a charge on both the greater and the lesser included offense. Based on the factual differences between this case and Updyke, the trial court's refusal to instruct the jury on assault was proper. The appellant inflicted much more than physical injury upon the victims, and the abuse occurred over a long period of time. In addition, the record indicates that the giving of an assault instruction was not adequately raised by either side during trial. In fact, defense counsel actually agreed that the defendant should be found guilty of child abuse or acquitted. The decision of the trial court is affirmed.
The judge in this matter was clearly aware of the legal precedent established by Updyke. Our decision amply distinguishes this case from Updyke; however, we feel compelled to urge the Alabama Supreme Court to revisit this issue. If that Court disagrees with the analysis used to differentiate this case from Updyke, we urge it to reexamine Updyke. This would appear to be an appropriate case to rectify what could be interpreted by some as potentially tragic precedent established by Updyke.[1]
In addition, as Judge Bowen's special concurrence in Miller aptly sets out, the validity of the line of cases holding that assault in the third degree is a lesser included offense of child abuse is questionable in light of the United States Supreme Court's decision in Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). See Miller, 565 So.2d at 276. In Schmuck, the United States Supreme Court adopted an elements approach to lesser included offenses. See Schmuck, 489 U.S. at 716, 109 S.Ct. 1443. Pursuant to this method, an offense is not considered a lesser included offense "unless the elements of the lesser offense are a subset of the elements of the charged offense."[2]Id. at 715, 109 S.Ct. 1443. This *894 approach is contrary to the method in § 13A-1-9(a)(1), Ala.Code 1975, and the method in Jordan, which focuses on the facts of the case instead of strictly relying on the elements. Under the Schmuck approach, assault in the third degree would not be considered a lesser offense to child abuse because the elements of assault are not included in the elements of child abuse.[3] Assault in the third degree requires some form of physical injury, while child abuse has no such requirement. See §§ 13A-6-22(a), 26-15-3, Ala.Code 1975.

II.
T.D.T. argues that the trial court erred in allowing into evidence (1) certain statements made by the children to Nancy Devore, a school counselor, and Debbie Land, a forensic interviewer employed by the Prescott House (a children's advocacy center), and (2) a videotaped interview conducted by Debbie Land. T.D.T. argues that the statements to the school counselor and the interviewer were hearsay. He further argues that, under § 15-25-31, Ala.Code 1975, the videotaped interview at the Prescott House should not have been admitted into evidence because his son was over the age of 12 at the time of trial.

A.
We find that the trial court did not err. First, the statements made by the children to the school counselor and the interviewer were not offered for the truth of the matter asserted in the statements. Rule 801(c), Ala.R.Evid., defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Testimony offered for a purpose other than to prove the truth of the matter asserted definitionally not hearsay. See, e.g., C. Gamble, McElroy's Alabama Evidence, §§ 273.01, 273.02 (5th ed.1996).
Here, the State was not trying to prove the truth of the matter asserted in the statements to the children's school counselor or the interviewer, but, rather to show what instigated the investigation that resulted in the charges against T.D.T. and what led school officials to contact the Department of Human Resources. Thus, the testimony of which T.D.T. complains does not fall within the definition of hearsay. Moreover, the trial court made clear to the jury that this evidence was not to be considered for the truth of the matters contained in the statements. The court stated:
"THE COURT: Ladies and gentlemen, let me give you some limited instructions. I believe you will hear some testimony now on conversations that took place allegedly between the alleged victims and this counselor. Now, the court will allow you to hear that. But, you do not consider itI'm not allowing it in for the truth of what's contained in the statements. Do you follow me? I'm allowing it in to show the status or state of mind that existed, perhaps.
"And I'll try to give you an example. Let us say we were trying a man to see if he was insane. That was the issue. And somebody comes in and says: I saw him out in the park yesterday. And he was out there screaming and preaching and saying he was God. We would allow that in, not for whether or not he's God. Do you follow me? That's what he's saying. But whether or not you can consider it in determining whether he's insane.

*895 "Now I don't think you're going to hear anything you haven't heard already. But I will allow the counselor to testify that certain statements were made to her. It doesn't necessarily mean they're true."
(R. 282-83.)
Thus, the trial court properly instructed the jury on how the evidence presented was to be usedonly to show the reasons why the Department of Human Resources was contacted. The trial court's instruction to the jury minimized any potential prejudice T.D.T. may have suffered. See Roper v. State, 695 So.2d 244, 246 (Ala.Cr. App.1996).

B.
Second, we find that the trial court did not err in admitting into evidence the videotaped Prescott House interview. (R. 300-304.) T.D.T. directs this Court to § 15-25-31, Ala.Code 1975, in support of his argument that because T.D.T.'s son was over the age of 12 at the time of trial, the taped statements should not have been admitted. Section 15-25-31, Ala.Code 1975, provides:
"An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving child physical offense, sexual offense, and exploitation, as defined in Section 15-25-39, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32 are met."
This provision makes admissible statements made by children under 12 years of age that would otherwise be considered inadmissible hearsay. The taped statements made by T.D.T.'s son were, however, "otherwise admissible in evidence" under Rule 801(d)(1)(B). Thus, § 15-25-31, Ala.Code 1975, does not apply to this case. Rule 801(d)(1)(B) provides:
"(d) Statements That Are Not Hearsay. A statement is not hearsay if
"1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."
One of T.D.T.'s primary defenses was that his children's mother had improperly influenced their testimony. T.D.T. attacked the credibility of the children as witnesses and suggested that the children were biased against him because of their mother. Thus, prior consistent statements by the children describing the abuse were properly admitted to rebut the charge of bias or recent fabrication. (R. 43-53.) The trial court did not err.

III.
T.D.T. contends that the trial court erred in denying his motion for a judgment of acquittal in that, he says, the State failed to prove a prima facie case of the offenses charging child abuse. In support of this assertion, he argues that the evidence does not support the jury's verdict and that the testimony of the children was tainted by bias.
The bulk of T.D.T.'s argument more properly addresses the issue of the weight of the evidence in this case, rather than its sufficiency.
"A question of sufficiency is presented when the State fails to establish a `prima facie case,' see C. Gamble McElroy's Alabama Evidence § 449.05 (4th ed.1991), whereas a question of weight is presented when the State's evidence is palpably less persuasive than the defense evidence, see Parker v. State, 395 So.2d 1090, 1103 (Ala.Cr.App.1980), cert. denied, 395 So.2d 1103 (Ala.1981)."
*896 Pearson v. State, 601 So.2d 1119, 1124 (Ala.Cr.App.1992). This court will not invade the province of the jury by reweighing the evidence. See Zumbado v. State, 615 So.2d 1223, 1240 (Ala.Cr.App.1993). Where there is legal evidence from which the jury could by fair inference find the defendant guilty, this court is not entitled to encroach upon the jury's role by weighing the credibility of witnesses. See Lawrence v. State, 443 So.2d 1351, 1353 (Ala. Cr.App.1983); Giles v. State, 440 So.2d 1237 (Ala.Cr.App.1983).
Regardless of the focus of T.D.T.'s argument, a review of the record reveals that the evidence, which was repeatedly corroborated, was more than sufficient to sustain his conviction. According to Gayle v. State, 616 So.2d 378, 380 (Ala. Cr.App.1993), when determining whether there is enough evidence to sustain a conviction, a reviewing court must "view the evidence in the light most favorable to the state" and cannot substitute its own judgment for that of the jury. "`The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.'" Inmin v. State, 668 So.2d 152, 154 (Ala.Cr. App.1995), quoting Gumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979) (emphasis added in Inmin).
As previously recited in this opinion, the testimony detailed numerous occasions on which T.D.T. beat with a belt and kicked both his minor son and daughter. There was extensive testimony that was corroborated that the appellant emotionally, physically, and sexually abused his children. Through the testimony presented at trial, if believed by the jury, sufficient evidence was presented from which the jury could reasonably find T.D.T. guilty of both counts of child abuse. Therefore, the trial court did not err in denying T.D.T.'s motion for judgment of acquittal.

IV.
T.D.T. contends that the trial court erred in refusing to give his requested instruction on parental discipline, as set out in § 13A-3-24, Ala.Code 1975, verbatim. Section 13A-3-24, Ala.Code 1975, entitled "Use of force by persons with parental, custodial, or special responsibilities," provides in pertinent part:
"The use of force upon another person is justified under any of the following circumstances:
"(1) A parent, guardian or other person responsible for the care and supervision of a minor or incompetent person, and a teacher or other person responsible for the care and supervision of a minor for a special purpose, may use reasonable and appropriate physical force upon the minor or incompetent person when and to the extent that he reasonably believes it necessary and appropriate to maintain discipline or to promote the welfare of the minor child or incompetent person."
The trial court's instruction to the jury omitted the phrase "he reasonably believes." During the following exchange, the trial court explained its rationale for doing so:
"[DEFENSE COUNSEL]: Your Honor, I have two exceptions to the charges. The first one would be on the charge that the Court made as far as themy requested charge as far as the parent's responsibility of care and supervision. The Code section specifically states that the parent may use reasonably and appropriate physical force upon the
"THE COURT: Give me that section.
". . . .
"[DEFENSE COUNSEL]: Okay. The Code section states that a person responsible for the care and supervision of the minor child may use reasonable and appropriate physical force upon the minor child when and to the extent he *897 reasonably believes it necessary and appropriate to maintain discipline. You left out when `he reasonably believes.'
"THE COURT: I certainly did. And I left it out intentionally.
"[DEFENSE COUNSEL]: Well, the Code section states that. That is in the Code section, and I except to the Court leaving that out.
"[THE COURT]: Well, I'll give you an exception.
"I don't thinkI think these children wereI mean this defendant was charged under [§ ] 26-15-3. And this whole section you read, as I read it, is dealing with discipline and maintaining order, suicide prevention, and medical treatment.
". . . .
"Now, I read you the section withthe section where they are charged with, except that I did not give the jury latitude that where `he reasonably believes.'
"[DEFENSE COUNSEL]: That's correct.
"THE COURT: That's right. So you've got an exception to that.
"I don't think that's the law in this case. All he's got to do is reasonably believe that he needs to kick them?
". . . .
"[THE STATE]: We wouldn'tif we asked a defendant, `Do you believe you reasonably used discipline?' and they said, `Yes, I do,' we could never prosecute a child abuse case
"THE COURT: Well, I don't think you could.
"[THE STATE]:if you follow his logic.
"THE COURT: I mean, that saysI understand. That's the rationale like self-defense where a man is caught in an emergency and he reasonably believes somebody is about to go in their pocket and kill him or somebody else. Then yes.
"But here you're talking about a parent who cares for, the supervision, all he's got to do isyou've got to prove it to the jury that he didn't reasonably believe that he needed to kick this boy?
"No, sir, you've got an exception. No need for us to quibble about it further."
(R. 488-92.)
We find that the trial court properly denied T.D.T.'s request. T.D.T. was indicted and convicted under § 26-15-3, Ala.Code 1975. Nothing in that section directs the reader to, or even references, § 13A-3-24, Ala.Code 1975, the Code section on discipline. The trial court acted well within its discretion in determining that a verbatim recitation of § 13A-3-24 would place an undue burden of proof on the State. T.D.T.'s requested instruction may also have had a tendency to confuse the jury. "The trial court's refusal to give written requested charges does not constitute error when the charges are covered in the trial court's oral charge, are confusing or misleading, are inapplicable or abstract, or are an incorrect statement of the applicable law." Stout v. State, 547 So.2d 894, 898-99 (Ala.Cr.App.1988).
Therefore, the trial court acted within its discretion in denying T.D.T.'s requested verbatim instruction on parental discipline. We further find that the omission from the trial court's instruction on parental discipline of the phrase "he reasonably believes" did not prejudice T.D.T.'s defense.

V.
T.D.T. argues that the trial court erred in sentencing him to consecutive prison terms for offenses against the female child that, he says, involved the same conduct. He argues that the daughter's whippings were "a part of the allegations of sexual abuse" because, he claims, "[v]irtually all of the claims of child abuse involve the allegations of sexual abusei.e., whippings and threats of whippings if the child did not snuggle with the defendant in the mornings." (Appellant's brief, p. 31.) Thus, he claims, "it is an abuse of discretion not to run those sentences concurrently." (Appellant's brief, p. 32.)
*898 T.D.T. failed, however, to raise this claim at the trial level. Because T.D.T. did not present to the trial court his argument that his sentences should run concurrently, this issue is not preserved for our review. See Stinson v. State, 669 So.2d 1010 (Ala.1995); Faircloth v. State, 471 So.2d 485, 493 (Ala.Cr.App.1984). Moreover, where a trial court "`imposes a sentence within the statutory range, this Court will not disturb that sentence on appeal.'" Brown v. State, 611 So.2d 1194, 1198 (Ala.Cr.App.1992), quoting Alderman v. State, 615 So.2d 640, (Ala.Cr.App.1992).

VI.
T.D.T. argues that the trial court erred in denying his motion for a judgment of acquittal on the charge of first-degree sexual abuse.[4] Specifically, T.D.T. argues that there was insufficient evidence that the sexual contact was "done for the purpose of gratifying the sexual desire of either party," as required under § 13A-6-60, Ala.Code 1975. In support of his argument, T.D.T. argues that the daughter never reported the sexual abuse to her mother or during the Prescott House interview, and that her testimony as to seeing a white, creamy substance and feeling the substance in the bed when her father's penis touched her backside was elicited by a leading question. He further argues that the children were "in the control of the divorcing mother" and were "subject to suggestion." (Appellant's brief, p. 34.)
Again, T.D.T.'s argument focuses on the weight of the evidence. This court will not invade the province of the jury by reweighing the evidence. See Zumbado, 615 So.2d at 1240. Where there is legal evidence from which the jury could by fair inference find the defendant guilty, this court is not entitled to encroach upon the jury's role by weighing the credibility of witnesses. See Lawrence, 443 So.2d at 1353; Giles, 440 So.2d at 1237.
Moreover, ample evidence was presented at trial to support sending this case to the jury. Section 13A-6-66, Ala.Code 1975, defines sexual abuse as follows:
"(a) A person commits the crime of sexual abuse in the first degree if:
"(1) He submits another person to sexual contact by forcible compulsion; or
". . . .
"(3) He, being sixteen years old or older, subjects another person to sexual contact who is less than twelve years old."
§ 13A-6-66, Ala.Code 1975. "Sexual contact" is defined in § 13A-6-60, Ala.Code 1975, as "[a]ny touching of the sexual or intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party."
The evidence presented at trial tended to show that T.D.T. used a belt and threats of force to compel his daughter, who was under the age of 12, to "snuggle" with him in bed. Testimony tended to show that T.D.T. rubbed his penis against his daughter's backside and fondled her under her panties on countless occasions, and that, on one such occasion, he ejaculated. Because the State presented sufficient legal evidence from which a jury could reasonably find T.D.T. guilty of sexual abuse through his touching of his daughter in order to satisfy his own sexual desires. Thus, the trial court did not err in denying T.D.T.'s motion for a judgment of acquittal.
Based on the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
LONG, P.J., and McMILLAN and BROWN, JJ., concur.
BASCHAB, J., concurs specially with opinion.
*899 BASCHAB, Judge, concurring specially.
I agree with the result the majority reaches in this case. With respect to Part I of the majority opinion, I concur only with the portion holding that the trial judge properly refused to instruct on third-degree assault under the facts of this case. Although the element approach to lesser included offenses adopted in Schmuck, supra, might lead to more predictable results than the inherent relationship test, our legislature has not yet chosen to adopt that approach. Therefore, we are bound by the inherent relationship approach set forth in § 13A-1-9, Ala.Code 1975.
NOTES
[1] T.D.T.'s counsel on appeal was not his counsel at trial.
[1] Society must protect the physical and psychological well-being of its children. In order to safeguard this interest, legislation has been passed that criminalizes child pornography the Child Pornography Prevention Act of 1996. In addition, Alabama's hearsay rule provides for the admission of hearsay statements made by child-abuse victims under the age of 12. See § 15-25-31, Ala.Code 1975; Allen D. Cope, Alabama's Child Hearsay Exception, 47 Ala. L.Rev. 215, 216 (1995). Alabama also categorizes the murder of a child under the age of 14 as capital murder. See § 13A-5-40(a)(15), Ala.Code 1975. All of these efforts have been made to support a policy of preventing and deterring child abuse. Allowing assault in the third degree to always be considered as a lesser included offense of child abuse as Updyke suggests would negate the positive efforts already made to advance the interests of our children.
[2] The Supreme Court adopted the elements approach in applying Rule 31(c), Fed.R.Crim. P., the federal rule regarding lesser included offenses. See Schmuck, 489 U.S. at 716, 109 S.Ct. 1443. The Court stated that Rule 31(c) requires the inclusion of the lesser offense in the greater offense. See id. at 717, 109 S.Ct. 1443. The Court further stated that the inherent relationship approach improperly dispenses of this requirement, permitting an instruction on the lesser included offense "even if the proof of one offense does not invariably require proof of the other." Id. The Court concluded that the elements approach promotes judicial economy with its greater predictability and certainty, while the inherent relationship test is confusing and unclear. See id. at 720-21, 109 S.Ct. 1443.
[3] The Supreme Court of Mississippi uses the elements test for determining whether an offense is a lesser included offense. See Austin v. State of Mississippi, 605 So.2d 14, 16 (Miss. 1991).
[4] Whether T.D.T. acted with "the purpose of gratifying the sexual desire of either party" is the only issue T.D.T. preserved with respect to his motion for a judgment of acquittal. (R. 319.)